TERRE HAUTE COOPERAGE, INC., *v.* BRANSCOME *et al.*

(In Banc.  May 24, 1948.)

[35 So. (2d) 537.  No. 36793.]

John F. Frierson, of Columbus, and H. B. Aikman, of Terre Haute, Ind., for appellant.

Ray, Spivey & Cain, of Canton, and **V. D. Rowe, Jr.**, and **H. T. Holmes**, both of Winona, for appellees.

496

[redacted]

Argued orally by **John F. Frierson,** for appellant.

**L. A. Smith, Sr., J.,** delivered the opinion of the court.

This suit originated in the Chancery Court of Montgomery County, where appellant filed its original bill seeking the cancellation of a timber deed to it from appellees, who are husband and wife. The negotiations for the conveyance started about about two months before its culmination in the deed on February 1, 1947. The sale involved all white oak and post oak, twelve inches and up at the stump, and suitable for staves, or three hundred and sixty acres, of nine forty-acre subdivisions, in Mont-

gomery County. The consideration was $10,000, $1,000 in cash, and the balance at the end of sixty days from the date of the execution of the deed.

For reasons hereinafter to be shown, appellant brought this suit, praying the cancellation of this instrument because of its own unilateral mistake, offering "any reasonable sum to be paid to the defendants as they have been caused to incur." The original bill did not waive answer under oath. Its foundation was: "because of a mistake in the indentity of such timber, or some other mistake not unknown to complainant, said representative of complainant thought and believed the timber being considered for purchase and for which a contract of purchase was executed aggregated 340,000 to 350,000 feet; whereas, in truth and in fact, there was and is about 117,000 feet." As stated, the error was admittedly that of appellants, if error it were, and no part thereof was due to appellees. It is to be noted that the bill makes no claim that the instrument should have been an option, so intended by appellant; or that its agent exceeded his authority, or that there was a mutual mistake.

Appellant grounds his right to relief on this rule from Section 33, 9 Am. Jur., Cancellation of Instruments: "Generally it may be said that equitable relief by way of rescission will be given from a unilateral mistake relating to a material feature of the contract of such grave consequence that enforcement of the contract would be unconscionable, if the party making the mistake was in the exercise of ordinary diligence, and relief can be given without serious prejudice to the other party, aside from the loss of his bargain."

Section 34, ibidem, provides that "Negligence on part of the complainant, contributing to the mistake, will also prevent the securing of relief, the cases are practically unanimous in holding that mistake which results from failure to exercise that degree of care and diligence which would be exercised by persons of reasonable prudence under the same circumstances will not be relieved

against. . . . However, it is not every negligence which will preclude equitable relief; it has been held that relief by way of cancellation will be granted for a unilateral mistake of fact, even though it was due to the negligence of the complainant, if his lack of care did not amount to the breach of a legal duty, or a duty to another, which alone, some courts hold, constitutes culpable negligence, or does not prejudice the other party to the transaction.''

For the purpose of discussion of the above authorities with relation thereto, we will further examine the facts. This deal one way or another had been on the minds and in the conversations of the parties, more or less, from December 11, 1946, to February 8, 1947, during which time the situation had been viewed by the appellant's manager at Columbus, and its timber cruiser, who was the father of the manager, and who sometimes conducted negotiations for purchase of timber on behalf of appellant. This timber estimator, or cruiser, was W. C. Karns, who reported to his son there were 340,000 feet of timber on the lands involved. His son, manager of appellant's mill at Columbus, called Mr. Richards, Vice President, at the Home Office in Terre Haute, who gave instructions: ''to have a contract drawn up between Terre Haute Cooperage, Inc. and Mr. Branscome to pay a thousand dollars by draft—sight draft, and the balance to be paid within sixty days, the other nine thousand.'' However, this witness, appellant's manager, further testified. ''I misunderstood Mr. Richards and in so doing I had a timber deed made.''

Mr. Richards testified that the manager's action was in line with the usual procedure. The deed was executed and enclosed in an envelope, with the draft printed on the back of the envelope, and placed for collection. Upon notice of its arrival at Terre Haute, without opening this container for examination of the instrument, Mr. Richards telephoned appellant's attorney in Columbus, who had prepared the deed, in order to ascertain its nature, and was informed it was a deed. His attorney in Terre

Haute advised against payment of the draft, and it was. not paid. Mr. Richards, as he stated, being under the impression that it was a different type of contract than it was, immediately sent timber cruisers from the home office to make another cruise. The original cruise, it must be borne in mind had also been made for appellant by its Mississippi cruiser, W. C. Karns, on whose estimate the trade was consummated.

The home office cruisers reported that a tree by tree estimate showed only 117,000 feet of post oak and white oak, as described in the deed. Thereupon, at once Mr. Richards sought rescission, the result of which was failure, culminating in this suit. During the progress of the trial, appellant was granted leave to, and did, amend its. original bill so as to ask for general relief; was denied its request that the amount of the timber be referred to a master; and obtained an agreement for some extended time to remove the timber in the event it finally lost the lawsuit. The appellees, in connection with their sworn answer, filed a cross-bill demanding payment of the $10,000 consideration as due and unpaid for the timber deed. The chancery court dismissed the original bill, and gave cross-complainants, appellees here, a decree for the $10,000. No attempt was made to prove any fraud, misrepresentation or concealment against appellees, or either of them. In his testimony, Mr. Branscome said he told the representatives of appellant that he sold this timber in bulk, and guaranteed nothing but the title and the boundary lines.

Appellees argue here that the burden of proof of mistake was on appellant, which he failed to sustain. But, also say, that even if such mistake as charged had been proven, the appellant had relied upon and acted on its own inspection and examination of the timber in determining its value; that appellees neither contributed to, nor induced the mistake, if any, nor had any knowledge that appellant was laboring under any mistake; and that

the mistake of appellant, if any, could have been avoided by reasonable diligence.

In this connection Pomeroy's Equity Jurisprudence, 4th Ed., Vol. 2, Section 856, p. 1751, declares that "it has been said that equity would never give any relief from a mistake, if the party could by reasonable diligence have ascertained the real facts; nor where the means of information are open to both parties and no confidence is reposed; . . ." It seems that this text, which we approve, applies to the conduct and attitude of appellant in this matter, and precludes them from relief on the facts of the case. In Butterfield Lumber Company v. Guy, 92 Miss. 361, 46 So. 78, 79, 15 L. R. A. (N. S.) 1123, 131 Am. St. Rep. 540, this Court said: "No grounds for equitable relief is shown by the mere fact that the party invoking the aid of the court has made an improvident contract."

After appellant's first survey by W. C. Karns, (who did not testify), and on which it acted, followed by that of the home office cruisers of appellant, there were other surveys. To recapitulate, Karns reported 340,000 feet; the Normans, home office estimators, reported 117,000 feet; Nelson, another of appellant's cruisers, reported 175,000 feet, of which only 90,000 were suitable for staves. On the other hand, appellee's surveyor, Woods, said he saw 200,000 feet on five of the nine forty-acre subdivisions, and Mr. Branscome seemed to deem that sufficient to determine the total amount; and Mr. Brown, timber estimator for the State Highway Department estimated 325,000 feet. It is true, not all of these estimates bore in mind whether the timber was suitable for staves. However, it is manifest that there was a sharp conflict in the evidence, which the chancellor resolved against appellant by dismissing its bill, and being on conflicting testimony, we will not disturb it, as we cannot say he was manifestly wrong, in refusing to select the cruise of 117,000 feet as dominant and controlling proof.

The concluding clause of Powell v. Plant (Miss.) 23 So. 399, 403, demonstrates its irrelevancy on the issue of the

cancellation of a contract for a unilateral mistake. We quote: "If the defendant herself, or through her husband, intentionally produced this belief, (the mistake) it was, in equity, a fraud. If, however, it was a mistake upon the part of both parties, what will be the effect? The jurisdiction of equity to relieve a mistake of fact is unquestionable." It is clear that the reference is to mutual mistake in that case. In Corley et al. v. Reed et al., 164 Miss. 678, 145 So. 241, we held that purchaser is not justified in relying on vendor's representations, where, before contracting, he resorts to proper means of ascertainment of the truth of statements, and where representation is concerning generalities equally within knowledge or means of acquiring knowledge by both parties. In the case at bar, there is no pretense that appellees misrepresented anything, but the means of acquiring knowledge here were possessed equally by both parties. Appellants used their own employee, and appellees had nothing to do with any error he may or may not have made. We have recognized the doctrine underlying the remedy of cancellation of a contract for unilateral mistake in our jurisprudence, Allen et al. v. Luckett; 94 Miss. 868, 48 So. 186, 187, 136 Am. Rep. 605, where we said: "If the terms are stated according to the intent of the parties, but there is an error of one or both in respect of this thing to which these terms apply . . . a court of equity may grant appropriate relief, provided the fact about which the mistake occurs was a material element in the transaction." That case involved an entirely different situation factually than the one under discussion.

The same degree of proof for rescission should be required as for reformation of a deed. Here, the recitals of the deed before us are plain and unambiguous. In an argument before the Court on the question of the admission or exclusion of certain testimony, attorney for appellant said to the Court: "if we can demonstrate, as we think we can, that the complainant has not been negligent in making his own error through his own selected cruiser,

then a Court of equity will be justified in requiring a rescission of the contract and placing the parties in statute quo.'' In St. Paul Fire & Marine Insurance Company v. McQuaid, 114 Miss. 430, 444, 75 So. 255, this Court quoted with approval the rule as to reformation announced in Jones v. Jones, 88 Miss. 784, 41 So. 373, as follows: ''Adhering to the arbitrary, but salutary, rule which requires a party seeking a reformation of a deed, the recitals of which are definite and unambiguous, to establish, not only by the preponderance of the testimony, but practically to the exclusion of every other reasonable hypothesis, that mutual mistake, fraud, or error occurred in the making of the instrument sought to be reformed, we are constrained to hold that the proof in this case fails to measure up to that requirement.''

Referring now back to appellant's quotations from 9 Am. Jur., Section 33, Cancellation of Instruments, and continuing the quotation, we find that: ''Some courts, however, are inclined to restrict relief from mistake by way of cancellation to cases where the mistake is mutual, and not to grant relief on the ground of unilateral mistake unless there is some especial consideration therefor. Still other courts hold that equity will not rescind a contract for a mistake by one party only, unless there has been fraud or inequitable conduct on the part of the other, or unless the mistake was brought about by the conduct of such other party, who seeks to take advantage of it.''

In appellant's argument it claims not to have been guilty of such negligence as will defeat its right to relief from the effect of his own unilateral mistake, if any. In the first place, it was negligence, for its own cruiser to estimate 340,000 feet of stave timber, so grossly inaccurate as against 117,000 feet by its other estimator, if the latter figure were correct. In the next place, it was guilty of negligence, when, without full information, its Vice President instructed its Columbus Manager to close the deal, without specific instructions as to whether it

was to be by option or deed. It was also negligent of an opportunity for further and maturer consideration both on its part when it granted appellees such a short time within which to accept or reject appellant's offer of $10,000, as against appellees' demand of $15,000.

As to the position by appellant that to hold them to their purchase would be "unconscionable," we find that "An 'unconscionable' contract is one such as no man in his senses and not under a delusion would make on the one hand, and as no honest and fair man would accept on the other. Wenninger v. Mitchell, 139 Mo. App. 420, 122 S.W. 1130, 1132." See Vol. 43, Words and Phrases, Perm. Ed., at page 79. Also, it is said that "equity will not enforce an unconscionable contract, but the fact that one provision of a legal contract, . . . is more favorable to one party than to the other, does not ordinarily render it 'unconscionable.' Chanute Brick & Tile Company v. Gas Belt Fuel Company, 82 Kan. 752, 109 P. 398, 399." Vol. 43, Words and Phrases, Perm. Ed., page 79. And, furthermore in "2 Pom. Eq. Jur., Sec. 803, says the terms 'fraud' or 'fraudulent,' as used by the courts in speaking of equitable estoppels, are virtually synonymous with 'unconscientious' or 'inequitable.' The Ottumwa Belle, D. C., 78 F. 643, 648." Vol. 43, Words and Phrases, Perm. Ed., page 78. In our judgment, this transaction, either in whole or in part, cannot be termed unconscionable.

In proper cases, equity will grant appropriate relief to a party to a contract for a unilateral mistake, but the circumstances and facts in the case at bar, even if it be conceded that there was a mistake by appellant's surveyor, Karns, are not such as to entitle appellant to relief under such power of the Court. The chancellor so held, and, we think, correctly so. The decree of the trial court will therefore be affirmed, since we find no error therein.

Affirmed.