688 F.2d 398
 HIGHLANDS INSURANCE COMPANY, Plaintiff-Appellee Cross-Appellant,
v.
ALLSTATE INSURANCE COMPANY, Defendant-Appellant Cross-Appellee,
Tri-State Savings and Loan Association, Defendant-Cross-Appellee.
 No. 81-4238.
 United States Court of Appeals,
Fifth Circuit.
 Oct. 7, 1982.
 
 Joseph L. McCoy, Sinith C. Tipton, Jackson, Miss., for defendant-appellant cross-appellee.
 James L. Carroll, Jackson, Miss., for plaintiff-appellee cross-appellant.
 Sam E. Scott, John B. MacNeill, Jackson, Miss., for Tri-State.
 Appeals from the United States District Court for the Southern District of Mississippi.
 Before RUBIN and REAVLEY, Circuit Judges, and HUNTER*, District Judge.
 ALVIN B. RUBIN, Circuit Judge:
 
 
 1
 Two insurers issued separate policies, each purporting to insure the same property against loss by fire, each with a loss payable clause in favor of the same institutional mortgagee of the property. Each policy contained a clause providing that it would not be effective if there were other insurance on the property. When the property was damaged by fire, each insurer denied liability under its policy and one contended alternatively that the loss should be prorated. After a bench trial, the district judge concluded that, under Mississippi law, which applies in this diversity case,[1] both of the policies were in effect and prorated the liability. Concluding that only one of them, the Allstate renewal policy, was in effect when the fire occurred, we reverse in part and affirm in part.
 
 
 2
 * In January 1973 Allstate Insurance Company ("Allstate") issued its Policy No. 190 in the amount of $50,000 insuring property owned by Carroll Ed Sanders in Iuka, Mississippi, and naming Tri-State Savings and Loan Association ("Tri-State") as mortgagee. The term of this policy extended to January 9, 1976. In August 1974 Allstate issued Policy No. 899 covering both the mortgaged property, at 126 Pearl Street, and other properties owned by Sanders, and again naming Tri-State as mortgagee. Allstate intended that this policy replace its Policy No. 190, but it failed to cancel the earlier policy, so there were two Allstate policies ostensibly covering the same property at the same time.[2] In March 1975 Allstate mailed Tri-State a notice canceling Policy No. 899 for nonpayment of premiums. About the same time it received this notice, Tri-State received a contradictory notice from Allstate dated "January 10," without mention of the year, stating that Policy No. 899 was to be continued in force without interruption.
 
 
 3
 In a routine check, A. W. Bonds, the managing officer of Tri-State, reviewed his files in August 1975 to ensure that there was adequate insurance on the Pearl Street property. He could not satisfy himself from the files that there was adequate insurance and he did not receive a satisfactory explanation from Allstate's Iuka agent. Therefore, to protect Tri-State's interest, Bonds obtained two consecutive thirty-day binders from Highlands Insurance Company ("Highlands") through Highlands' local agent. Highlands' agent understood that the coverage was temporary, pending determination whether the Allstate policy was effective.
 
 
 4
 Bonds later concluded that Allstate was not insuring the Pearl Street property. Accordingly, at his request, Highlands issued a policy covering the Pearl Street property in the amount of $35,000, with a loss payable clause in favor of Tri-State as mortgagee. The policy term was September 9, 1975, to September 9, 1978. The district court found that this policy was issued on the basis of Bonds' assertion that "no other insurance existed on the property."
 
 
 5
 Several months later, Allstate issued a new policy, again identified as "No. 190" ("the Allstate renewal policy"), insuring the Pearl Street property for $50,000 from January 9, 1976, to January 9, 1979. This policy also contained a loss payable clause in favor of Tri-State. No application had been made for the policy by either Sanders or Tri-State and no premium was ever paid for it.
 
 
 6
 The Pearl Street property was destroyed by fire on January 16, 1977. At that time Tri-State had in its files both the Highlands policy and the Allstate renewal policy. Tri-State later foreclosed on its mortgage but is still due a balance of $33,278.67.
 
 
 7
 Highlands filed suit against both Allstate and Tri-State seeking a declaratory judgment that its policy was not in effect at the time of the loss. Highlands contends that, because Tri-State violated the "other insurance" clause in Highlands' policy, it is not liable to Tri-State for any loss caused by the fire. Alternatively, Highlands contends that any liability should be prorated according to the total amount of insurance coverage in effect at the time of the loss. Tri-State, of course, seeks to recover from both insurers, or either one. Allstate denies liability to Tri-State on the ground that its renewal policy was issued by mistake. Allstate argues in the alternative that the "other insurance" clause in its renewal policy was violated.
 
 II
 
 8
 Allstate contends that Policy No. 190 was properly terminated in 1975, and the Allstate renewal policy was sent to Tri-State in 1976 through its own clerical error. It contends, therefore, that the renewal policy was not a valid contract of insurance. The district court concluded that Allstate's renewal policy was in effect when the fire occurred and that Allstate had waived its right to cancel the policy. Allstate challenges both conclusions as misapplications of Mississippi law.
 
 
 9
 Mississippi law does not allow a party to avoid a contract on the ground of unilateral mistake if the mistake was merely the result of that party's inattention or negligence. Hunt v. Davis, 208 Miss. 710, 724, 45 So.2d 350, 352 (1950) (quoting Wall v. Wall, 177 Miss. 743, 748, 171 So. 675, 677 (1937)); Sacred Heart S. Missions, Inc. v. Terminix Int'l, Inc., 479 F.Supp. 348, 350-51 (N.D.Miss.1979). This rule, however, is not inexorable. See Mississippi State Bldg. Comm'n v. Becknell Constr., Inc., 329 So.2d 57, 60-61 (Miss.1976) (quoting State Highway Comm'n v. State Constr. Co., 203 Or. 414, 435, 436, 280 P.2d 370, 380, 381 (1955)); Sacred Heart S. Missions, Inc. v. Terminix Int'l, Inc., 479 F.Supp. at 351. If (1) the alleged mistake, although unilateral, is of so fundamental a character that the minds of the parties never in fact met, or an unconscionable advantage has been gained; and (2) there was no gross negligence or willful neglect by the party responsible for the mistake, either in committing the mistake or in not seeking relief from it, then the court may, in its discretion, excuse the responsible party. Mississippi State Bldg. Comm'n v. Becknell Constr., Inc., 329 So.2d at 59-60.[3]
 
 
 10
 The district judge concluded that Allstate's business practices precluded it from denying coverage under its renewal policy. As he noted in his findings of fact, Allstate had issued Policy No. 899 to replace Policy No. 190, but, because of clerical error, nevertheless neglected for six months to terminate Policy No. 190. Thus Allstate itself violated the "other insurance" clauses of both Policy No. 190 and Policy No. 899[4] by keeping both policies in force simultaneously. Allstate then sent Tri-State conflicting notices, one of them saying Policy No. 899 was canceled, the other saying that policy was to be continued. It further confused matters by failing to provide a full date in the continuation notice. When Tri-State's general manager communicated with Allstate to find out whether Allstate had insurance on the Pearl Street property, Allstate was unable to give him a definite answer. Several months later, apparently through another clerical mistake, Allstate sent the renewal policy to Tri-State. Although no one paid the premium on this policy, Allstate allowed the policy to remain in Tri-State's files for almost a year, with a copy in its own files, and did nothing either to collect the premium or to cancel the policy until after the loss. These findings are sufficient to warrant the district court's conclusion that Allstate was so negligent that it should not be permitted to invoke its alleged clerical mistake to avoid its contract of insurance with Tri-State on the renewal policy. See Terre Haute Cooperage, Inc. v. Branscome, 203 Miss. 493, 502, 35 So.2d 537, 541 (1948).[5]
 
 
 11
 Neither assent to coverage nor express acceptance was required of Tri-State. Considering its status as mortgagee, its acceptance of the contract may be implied from its retention of the renewal policy. A mortgagee is not required to mail express acceptance to every insurer who issues a policy protecting its insurable interest or run the risk of noncoverage. We agree with the district court's conclusion that, in the circumstances of this case, Tri-State's mere retention of the renewal policy was sufficient to constitute acceptance of a contract of insurance with Allstate.[6]
 
 
 12
 This result is not altered by nonpayment of the policy premium. The Allstate renewal policy had a deferred premium payment endorsement that apparently eliminated payment of the premium as a condition precedent to the formation of a valid contract of insurance.[7] The record also suggests that Allstate sometimes issued policies and kept them in force even though premiums were not paid on them.[8] Moreover, the loss payable provision entitles Tri-State by law to the benefit of the Mississippi "union" or "standard mortgage clause." Miss. Code Ann. § 83-13-9.[9] This clause automatically becomes a part of a fire insurance policy insuring property on which there is a mortgage when the policy contains a loss payable clause for a mortgagee.[10] In effect the statutory clause creates a new and independent contract between the mortgagee and the insurer,[11] a contract " 'dependent for its validity solely upon the course of action of the insurance company and the mortgagee.' " Bacot v. Phoenix Ins. Co., 96 Miss. 223, 247, 50 So. 729, 734 (1909) (quoting Syndicate Ins. Co. v. Bohn, 65 F. 165, 178 (8th Cir. 1894)).[12] Without ten days' notice to Tri-State, as loss payee under the Allstate renewal policy, the nonpayment of the premium on the renewal policy could not terminate Tri-State's coverage.[13] National Sec. Fire & Cas. Co. v. Mid-State Homes, Inc., 370 So.2d 1351, 1354 (Miss.1979).
 
 
 13
 Allstate concedes that nonpayment of the premium is not dispositive, but relies on it as evidence that Tri-State never assented to the contract of insurance with Allstate proposed by the renewal policy. This argument lacks merit. As mortgagee, Tri-State was only secondarily liable for payment of the premium on this policy. Id.; Hennessey v. Helgason, 168 Miss. 834, 837, 151 So. 724, 725 (1934). Because Allstate never made any demand for payment on Tri-State,[14] Tri-State's nonpayment does not imply rejection, or nonacceptance, of coverage.
 
 
 14
 Allstate may not escape coverage on the ground that the Highlands policy violated the other insurance clause in the Allstate renewal policy. An insured who violates this clause forfeits his insurance coverage. See Zepponi v. Home Ins. Co., 248 Miss. 828, 833, 161 So.2d 524, 526 (1964). However, "(c)ourts frown on forfeitures and lean toward waiver in insurance cases.... Forfeitures are not favored if there are any circumstances indicating a waiver thereof." 16B J. Appleman & J. Appleman, Insurance Law and Practice § 9082, at 506-07 (rev. ed. 1981) (footnote omitted); accord, e.g., Jones v. New York Guar. & Indem. Co., 101 U.S. 622, 628, 25 L.Ed. 1030, 1035 (1880); Travelers Protective Ass'n of Am. v. Jones, 91 F.2d 377, 378 (5th Cir. 1937). "(W)here doubt exists forfeiture will be avoided." Aetna Ins. Co. v. Jeremiah, 187 F.2d 95, 98 (10th Cir. 1951).
 
 
 15
 A waiver is a voluntary and intentional relinquishment of a known right[15] or conduct that warrants an inference of such a relinquishment.[16] Waiver is usually a question of fact to be determined by the jury or, in a bench trial, by the court.[17] When the facts are undisputed, however, waiver is a question of law.[18] Even "slight circumstances" will support a finding that an insurer has waived a forfeiture clause in an insurance policy,[19] for "courts liberally construe in favor of an insured acts or circumstances by the insurer indicating an intention to waive a forfeiture."[20] Under Mississippi law an insurer may waive its right to forfeit or rescind an insurance policy by continuing the policy in force after learning of facts that would permit it to avoid the policy. Casualty Reciprocal Exch. v. Wooley, 217 So.2d 632, 636 (Miss.1969).
 
 
 16
 No one made any misrepresentations to Allstate about the existence of Policy No. 190.[21] Because Allstate intended to replace Policy No. 190 with Policy No. 899, "there (was) some circumstance to direct its attention to" the existence and contents of the Policy No. 190 file. Violin v. Fireman's Fund Ins. Co., 81 Nev. 456, 461, 406 P.2d 287, 290 (1965). Thus the district court could properly have found that Allstate had at least constructive knowledge of the contents of that file when it issued Policy No. 899.[22] This constructive knowledge[23] is enough to support the district court's conclusion that, by issuing Policy No. 899 and then keeping Policy No. 190 in force for six months, Allstate was deemed to have relinquished its right to enforce the other insurance clause in Policy No. 190 and the renewal policy. See Aetna Ins. Co. v. Smith, McKinnon & Son, 117 Miss. 327, 78 So. 289 (1918); New Orleans Ins. Ass'n v. Holberg, 64 Miss. 51, 8 So. 175 (1886); Hicks v. Home Sec. Life Ins. Co., 226 N.C. 614, 617, 39 S.E.2d 914, 916 (1946) (citing cases); Lanigan v. Prudential Ins. Co., 63 Hun 408, ---, 18 N.Y.S. 287, 289-90 (Sup.Ct.1892).[24] Allstate's carelessness or neglect may not avoid the waiver.[25]
 
 
 17
 We conclude, therefore, that the Allstate renewal policy was in effect on the date of the fire.
 
 III
 
 18
 Each policy contains a clause prohibiting other insurance. The clause in the Highlands policy reads:
 
 
 19
 (O)ther insurance is prohibited unless the total amount of insurance, including the amount of this policy, is inserted in the blanks provided on the first page of this policy under the caption Total Insurance. This Company shall not be liable for loss while the insured shall have any other insurance prohibited by this policy.[26]
 
 
 20
 As we noted earlier, slip op. p. 123, pp. 403-404 supra, violation of this clause voids the policy. It, therefore, provides a defense to a suit for loss occurring while there is additional insurance in violation of the terms of the policy. Zepponi v. Home Ins. Co., 248 Miss. at 833, 161 So.2d at 526; Flowers v. American Ins. Co., 223 Miss. 732, 78 So.2d 886 (1955).
 
 
 21
 To avoid violating this clause, Tri-State, upon receiving the Allstate renewal policy, should have disclaimed any interest in the Allstate policy and disclosed its existence to Highlands. See Insurance Co. v. Fitzgerald, 164 Miss. 279, 282, 144 So. 684, 685-86 (1932); National Union Fire Ins. Co. v. Provine, 148 Miss. 659, 670, 114 So. 730, 732 (1927) ("on discovery of the additional insurance, the insured is bound to disclose its existence to his insurer, and unequivocally disclaim any benefits therefrom").[27] Instead, as discussed earlier, Tri-State accepted and retained the Allstate renewal policy in its files along with the Highlands policy. Its acceptance of the Allstate coverage violated the other insurance clause and freed Highlands of any liability to Tri-State.
 
 
 22
 Tri-State's professed ignorance of the existence of the Allstate renewal policy is unavailing, for Tri-State is deemed to have knowledge of both the existence and the terms of the insurance policies in its possession. Springfield Fire & Marine Ins. Co. v. Nix, 162 Miss. 669, 673, 138 So. 598, 599 (1932); Home Mut. Fire Ins. Co. v. Pittman, 111 Miss. 420, 423, 71 So. 739, 740 (1916).[28] Tri-State had not relied on Sanders to obtain insurance coverage but had itself acted to secure the Highlands policy because it thought it had no coverage. It was not an unwitting victim of manipulation by its debtor. The course of events signaled the Iuka property for its special attention. Tri-State's professed good faith in dealing with the two insurers is irrelevant. "If the additional insurance clause is violated, the good faith or bad faith of the insured in breaching the clause is wholly immaterial." National Union Fire Ins. Co. v. Provine, 148 Miss. at 670, 114 So. at 732, quoted in Prissock v. Western Fire Ins. Co., 360 F.Supp. 1346, 1348 (N.D.Miss.1973).[29]
 
 
 23
 Tri-State cannot invoke the provision of Miss. Code Ann. § 83-13-9 that requires an insurer to give a mortgagee ten days' notice of cancellation of an insurance policy in which the mortgagee is a loss payee. That provision protects the mortgagee from loss occurring after the mortgagor or owner of an insured property causes a lapse in insurance coverage.[30] In this case, however, Tri-State itself violated the other insurance provision and caused the Highlands policy to be voided. Tri-State must suffer the consequences of its own acts or omissions under its policy with Highlands.
 
 
 24
 Moreover, Highlands had no previous notice, actual or constructive, of the existence of other insurance on the Pearl Street property. Highlands issued its policy in reliance on the representation that there was no other insurance on the property. It did not learn of the other insurance until after the fire. At that point, a ten day cancellation notice would have served no purpose, for "the rights of the parties had become fixed by the burning of the property." Insurance Co. v. Fitzgerald, 164 Miss. at 282, 144 So. at 685.
 
 
 25
 For these reasons, we conclude that Tri-State violated the other insurance clause in the Highlands policy and thereby freed Highlands of its obligations under its policy with Tri-State.
 
 IV
 
 26
 The judgment against Allstate is AFFIRMED and MODIFIED. Judgment shall be entered against Allstate for $33,278.67, the full amount due Tri-State. The judgment against Highlands is REVERSED and judgment shall be entered in its favor declaring it not liable for any part of Tri-State's loss.
 
 
 
 *
 District Judge of the Western District of Louisiana, sitting by designation
 
 
 [1]
 The parties do not contest the application of Mississippi law, which, because the insurance policies at issue in this case were issued in Mississippi to protect the interests of Mississippi insureds in property located in that state, governs the disposition of this case. Miss. Code Ann. § 83-5-7 (1973); Stuyvestant Ins. Co. v. A. C. Smith Motor Sales Co., 135 Miss. 585, 595, 99 So. 575, 577 (1924); see Preferred Risk Mut. Ins. Co. v. Poole, 411 F.Supp. 429, 433 n. 1 (N.D.Miss.), aff'd per curiam, 539 F.2d 574 (5th Cir. 1976)
 
 
 [2]
 Policy No. 899 provided $115,000 of coverage for the Pearl Street property. It was to expire on August 6, 1977
 
 
 [3]
 Two other requirements for the application of this doctrine-that there be no accrued, intervening rights, and that the parties' positions be such that the status quo may be restored, Mississippi State Bldg. Comm'n v. Becknell Constr., Inc., 329 So.2d at 61-need not be discussed in deciding this case
 
 
 [4]
 These clauses are similar to the one in the Highlands policy, p. 405 infra
 
 
 [5]
 Cf. Mississippi State Bldg. Comm'n v. Becknell Constr., Inc., 329 So.2d at 58-61 (one negligent act; mistake quickly brought to attention of nonnegligent party); Sacred Heart S. Missions, Inc. v. Terminix Int'l, Inc., 479 F.Supp. at 349, 351 (same). The contract at issue in Terminix International was described by the court as "unconscionable." " 'An " unconscionable" contract is one such as no man in his senses and not under a delusion would make on the one hand, and as no honest and fair man would accept on the other.' " Terre Haute Cooperage, Inc. v. Branscome, 203 Miss. at 502, 35 So.2d at 541 (quoting Wenninger v. Mitchell, 139 Mo.App. 420, 424, 122 S.W. 1130, 1132 (1909)). Allstate's renewal policy does not meet this test, for it regularly issues, and its customers regularly accept, such policies
 
 
 [6]
 See Springfield Fire & Marine Ins. Co. v. Nix, 162 Miss. 669, 673, 138 So. 598, 599 (1932); Cook v. Michigan Mut. Liab. Co., 154 Ind.App. 346, 350, 289 N.E.2d 754, 757 (1972); Harrington v. Aetna Cas. & Sur. Co., 489 S.W.2d 171, 176 (Tex.Civ.App.1972); Phelan v. Everlith, 1 Conn.Cir.Ct. 43, 45, 173 A.2d 601, 603-04 (1961); Crowther v. Sullivan, 290 S.W. 212 (Tex.Civ.App.1927); 13A J. Appleman & J. Appleman, Insurance Law and Practice § 7641, at 391-92 (rev. ed. 1976); cf. Rosenstock v. Mississippi Home Ins. Co., 82 Miss. 674, 680, 35 So. 309, 311 (1903) ("The silent acceptance of the policy by the assured closed the contract, and bound the assured to the agreement tendered by the policy ....")
 
 
 [7]
 Under Mississippi law payment of the insurance premium is not essential to the formation of a contract of insurance. Scottish Union & Nat'l Ins. Co. v. Warren Gee Lumber Co., 118 Miss. 740, 753, 80 So. 9, 13 (1918); see Soso Trucking, Inc. v. Central Ins. Agency, Inc., 236 So.2d 398, 403 (Miss.1970)
 
 
 [8]
 Allstate's witness testified that Allstate considered Policy No. 899 to be in force for six months after it was issued although Allstate had not received a premium payment on the policy
 
 
 [9]
 MORTGAGE CLAUSE
 Each fire insurance policy on buildings taken out by a mortgagor or grantor in a deed of trust shall have attached or shall contain substantially the following mortgagee clause, viz:
 Loss or damage, if any, under this policy, shall be payable to (here insert the name of the party), as __________ mortgagee (or trustee), as __________ interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; and in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same. The mortgagee (or trustee) shall notify this company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void. This company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for ten days after notice to the mortgagee (or trustee) of such cancellation and shall then cease, and this company shall have the right on like notice to cancel this agreement. In case of any other insurance upon the within described property, this company shall not be liable under this policy for a greater proportion of any loss or damage sustained than the sum hereby insured bears to the whole amount of insurance on said property issued to or held by any party or parties having an insurable interest therein, whether as owner, mortgagee, or otherwise. Whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all security held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of __________ claim. Nothing in the foregoing prescribed form shall be construed to in any manner modify the provisions of (Miss.Code Ann. s) 83-13-5.
 
 
 [10]
 United States v. Sentinel Fire Ins. Co., 178 F.2d 217, 228-29 (5th Cir. 1949) (en banc); National Sec. Fire & Cas. Co. v. Mid-State Homes, Inc., 370 So.2d 1351, 1353-54 (Miss.1979) (quoting Barry & Brewer v. Wright, 168 Miss. 216, 231-32, 150 So. 186, 189 (1933)); Scottish Union & Nat'l Ins. Co. v. Warren Gee Lumber Co., 118 Miss. at 758, 80 So. at 15; Bacot v. Phoenix Ins. Co., 96 Miss. 223, 240, 50 So. 729, 732 (1909)
 
 
 [11]
 Hartford Fire Ins. Co. v. Associates Capital Corp., 313 So.2d 404, 406 (Miss.1975); United States Fidelity & Guar. Co. v. Arrington, 255 So.2d 652, 655 (Miss.1971) (quoting Bacot v. Phoenix Ins. Co., 96 Miss. at 241-42, 50 So. at 732)
 
 
 [12]
 See Citizens State Bank v. American Fire & Cas. Co., 198 F.2d 57, 60 (5th Cir. 1952); National Sec. Fire & Cas. Co. v. Mid-State Homes, Inc., 370 So.2d at 1353-54
 
 
 [13]
 See note 9 supra. The policy itself provides:
 (I)n case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same .... This Company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for ten days after notice to the mortgagee (or trustee) of such cancellation ....
 
 
 [14]
 "(I)n case the mortgagor or owner shall neglect to pay any premium due under th(e) policy, the mortgagee ... shall, on demand, pay the same." Miss.Code Ann. § 83-13-9 (emphasis added); see note 13 supra; Hennessey v. Helgason, 168 Miss. at 837, 151 So. at 725-26
 
 
 [15]
 Van den Broeke v. Bellanca Aircraft Corp., 576 F.2d 582, 584 (5th Cir. 1978); Chambers & Co. v. Equitable Life Assurance Soc., 224 F.2d 338, 345 (5th Cir. 1955)
 
 
 [16]
 Phoenix Ins. Co. v. Ross Jewelers, Inc., 362 F.2d 985, 988 (5th Cir. 1966) ("While it may be said that waiver depends upon intention, the intention may be inferred from acts and conduct."); G. Amsinck & Co. v. Springfield Grocer Co., 7 F.2d 855, 860 (8th Cir. 1925); see Albert v. Joralemon, 271 F.2d 236, 240 (9th Cir. 1959)
 
 
 [17]
 Yates v. American Republics Corp., 163 F.2d 178, 180 (10th Cir. 1947) (citing cases); see Metropolitan Paving Co. v. City of Aurora, 449 F.2d 177, 182 (10th Cir. 1971); William H. Sill Mortgages, Inc. v. Ohio Cas. Ins. Co., 412 F.2d 341, 346 (6th Cir. 1969); 22 J. Appleman & J. Appleman, Insurance Law and Practice § 13,004, at 310 (rev. ed. 1979) ("(I)t is usually a question of fact as to a waiver of provisions as to other or double insurance.")
 
 
 [18]
 Casey Enterprises v. American Hardware Mut. Ins. Co., 655 F.2d 598, 604 (5th Cir. 1981); General Accident Fire & Life Assurance Corp. v. Schero, 151 F.2d 825, 827 (5th Cir. 1945); 22 J. Appleman & J. Appleman, Insurance Law and Practice § 13,001, at 295-96 (rev. ed. 1979)
 
 
 [19]
 16B J. Appleman & J. Appleman, Insurance Law and Practice § 9082, at 507 (rev. ed. 1981); accord, e.g., Casualty Reciprocal Exch. v. Wooley, 217 So.2d 632, 636 (Miss.1969) ("slight evidence will suffice to support a finding that the insurer waived the right of forfeiture"); Cole v. Atlanta Life Ins. Co., 23 Tenn.App. 525, 528, 134 S.W.2d 912, 914 (1939) ("courts are always prompt to seize hold of any circumstances that indicate a determination to waive a forfeiture")
 
 
 [20]
 16B J. Appleman & J. Appleman, Insurance Law and Practice § 9082, at 509 (rev. ed. 1981); accord, id. at 508 ("In passing on the question of the waiver of conditions in an insurance policy inserted for the insurer's benefit, a court will deal generously with the insured.")
 
 
 [21]
 Courts are less likely to find that an insurer has waived its right to forfeit a policy "where fraud on the part of the insured is involved." Casualty Reciprocal Exch. v. Wooley, 217 So.2d at 636; see 16C J. Appleman & J. Appleman, Insurance Law and Practice § 9303, at 504 (rev. ed. 1981)
 
 
 [22]
 See Trawick v. Manhattan Life Ins. Co., 447 F.2d 1293, 1295-96 (5th Cir. 1971); Union Ins. Exch., Inc. v. Gaul, 393 F.2d 151, 154-55 (7th Cir. 1968); Great N. Life Ins. Co. v. Vince, 118 F.2d 232, 236 (6th Cir.), cert. denied, 314 U.S. 637, 62 S.Ct. 71, 86 L.Ed. 511 (1941); Columbian Nat'l Life Ins. Co. v. Rodgers, 116 F.2d 705, 707 (10th Cir. 1940), cert. denied, 313 U.S. 561, 61 S.Ct. 838, 85 L.Ed. 1521 (1941); Metropolitan Life Ins. Co. v. Goldberger, 3 Misc.2d 878, 886, 155 N.Y.S.2d 305, 312 (Sup.Ct.1956); O'Rourke v. John Hancock Mut. Life Ins. Co., 23 R.I. 457, 460, 50 A. 834, 835 (1902); Kennedy v. Agricultural Ins. Co., 21 S.D. 145, 149, 110 N.W. 116, 118 (1906); Haas v. Integrity Mut. Ins. Co., 4 Wis.2d 198, 204, 90 N.W.2d 146, 150 (1958); McKinnon v. Massachusetts Bonding & Ins. Co., 213 Wis. 145, 146, 250 N.W. 503, 504 (1933); 16B J. Appleman & J. Appleman, Insurance Law and Practice § 9086, at 549 (rev. ed. 1981) ("(W)here an insurer, which has already issued one policy to the insured, issues another to him, it may be charged with knowledge of its own records." (footnote omitted))
 
 
 [23]
 In insurance law, at least when dealing with a possible waiver of a forfeiture clause, "knowledge includes constructive knowledge." Union Ins. Exch., Inc. v. Gaul, 393 F.2d at 154. Thus either actual or constructive knowledge will support such a waiver. See generally 16B J. Appleman & J. Appleman, Insurance Law and Practice § 9086 (rev. ed. 1981)
 
 
 [24]
 New Orleans Insurance Association v. Holberg, supra, suggests that the waiver is not absolute, but rather is limited by the amount of the other insurance issued or agreed to by the insurer. Thus, in this case, because Policy No. 899 added $115,000 of coverage to the property insured by Policy No. 190, Allstate is deemed to have consented to $115,000 of additional insurance on that property. Because the Highlands $35,000 policy is less than that amount, it comes within the scope of Allstate's waiver of the other insurance clause
 
 
 [25]
 See Supreme Lodge Knights of Pythias v. Kalinski, 163 U.S. 289, 299, 16 S.Ct. 1047, 1051, 41 L.Ed. 163, 166 (1896) ("If the company ought to have known of the facts, or, with proper attention to its own business, would have been apprised of them, it has no right to set up its ignorance as an excuse."); Monahan v. Mutual Life Ins. Co., 103 Md. 145, 158, 63 A. 211, 213-14 (1906); cf. 16B J. Appleman & J. Appleman, Insurance Law and Practice § 9082, at 505-06 (rev. ed. 1981) ("Equity will ... set aside a forfeiture of a policy procured by the insurer's neglect ....")
 
 
 [26]
 The Total Insurance blanks on the policy are not filled in. None of the parties suggests Highlands consented to other insurance coverage on the Pearl Street property
 
 
 [27]
 Accord, Gnat v. Westchester Fire Ins. Co., 167 Wis. 274, 167 N.W. 250 (1918)
 
 
 [28]
 See Gulf Guar. Life Ins. Co. v. Kelley, 389 So.2d 920, 922 (Miss.1980); Flowers v. American Ins. Co., 223 Miss. at 735, 78 So.2d at 886; cf. Zepponi v. Home Ins. Co., 248 Miss. at 833, 161 So.2d at 526 (mortgagor charged with knowledge of provision in insurance policy held by mortgagee for substantial period of time)
 
 
 [29]
 Accord, Palatine Ins. Co. v. Smith, McKinnon & Son, 115 Miss. 324, 331, 75 So. 564, 565 (1917) ("the insured has forfeited his contract, through ignorance"); see Zepponi v. Home Ins. Co., 248 Miss. at 831, 161 So.2d at 525
 
 
 [30]
 (W)here the "union" or "standard mortgage clause" is included in an insurance policy, the mortgagee is entitled to the proceeds of the policy, and the mortgagee's right to recover will not be invalidated by the act or negligence of the mortgagor of the insured's property. That is to say, no act or default of any person other than the mortgagee or those claiming the proceeds under the mortgagee shall affect the rights of the mortgagee to recover in case of loss
 Hartford Fire Ins. Co. v. Associates Capital Corp., 313 So.2d at 407 (emphases added); see Syndicate Ins. Co. v. Bohn, 65 F. at 173; Hardy v. Lancashire Ins. Co., 166 Mass. 210, 211, 44 N.E. 209, 210 (1896); Eddy v. London Assurance Corp., 143 N.Y. 311, 320, 38 N.E. 307, 309-10 (1894).