**John Thomas MORRIS, Plaintiff,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Defendant.**

**No. EC85–427–S–D.**

United States District Court, N.D. Mississippi, E.D.

May 5, 1987.

C. Emanuel Smith, Mayfield & Smith, Tupelo, Miss., for plaintiff.

William E. Chapman, III, Daniel, Coker, Horton and Bell, Jackson, Miss., for defendant.

## MEMORANDUM OPINION

SENTER, Chief Judge.

This action involves a dispute as to the existence of a valid settlement agreement in an underlying workers' compensation claim. Presently before the court is defendant's motion for summary judgment on all issues or, alternatively, for summary judgment on the issue of punitive damages. For the reasons discussed hereinbelow, the court is of the opinion that summary judgment in favor of defendant is appropriate.

## I. FINDINGS OF FACT.

Many of the underlying facts are undisputed by the parties. On October 4, 1982, plaintiff John Thomas Morris filed a motion to controvert a workers' compensation claim wherein he alleged that he suffered an on-the-job injury on October 28, 1981, while employed by Marshall Durbin Company in Tupelo, Mississippi. On February 12, 1985, after a hearing on the claim, the Workers' Compensation Commission administrative law judge ruled against Morris and in favor of Liberty Mutual Insurance Company (hereinafter "Liberty Mutual"), the workers' compensation carrier for Marshall Durbin. Morris thereafter filed a petition for review, and a hearing was conducted by the Mississippi Workers' Compensation Commission on July 29, 1985.

For the purpose of attempting to settle the workers' compensation claim, despite resolution of the claim before the administrative law judge, negotiations continued between plaintiff's attorney, Mayfield, Liberty Mutual's adjuster, Herrington, and Liberty Mutual's attorney, Lagrone. On August 5, 1985, Herrington made an offer to Mayfield to settle the workers' compensation claim for $8,000.00, all inclusive. *See* deposition of Herrington, p. 13; deposition of Mayfield, pp. 7–8. Mayfield, on behalf of plaintiff, rejected that offer and made a counteroffer to settle the claim for $8,000.00 plus the outstanding medical bill. This counteroffer was not accepted by Herrington. On August 6, Mayfield and Lagrone continued negotiations in an attempt to settle the claim. The negotiations between Mayfield and Lagrone generated some correspondence which forms the dispute in this matter.

In a letter to Mayfield dated August 7, 1985, Lagrone stated that he was "in a position to settle this case with [Mayfield] at the level of $8,000.00" and that he "would be willing to recommend that Liberty pay whatever medical is outstanding and unpaid...." A copy of this letter is included as Appendix A to this opinion. It is unclear when Lagrone actually dictated this letter. *See* deposition of Lagrone, pp. 9, 47. In a letter dated the same day, Lagrone advised the Workers' Compensation Commission that the parties were close to a full settlement of the matter and requested that the Commission withhold any decision until further announcement by the parties.

Unbeknownst to the parties, the Commission had issued its ruling on plaintiff's petition for review, finding against plaintiff and in favor of Marshall Durbin, the employer. The Commission's order was dated August 6, 1985. Mayfield received the order by certified mail on the morning of August 8. *See* deposition of Mayfield, pp. 13–14. The record is unclear as to when and by whom Lagrone was notified of the Commission's ruling, although it was at some time on August 8. *See* deposition of Lagrone, p. 34. Approximately six hours after learning of the Commission's decision, on August 8, Mayfield had hand-delivered to Lagrone's office a letter dated August 8. *See* deposition of Mayfield, pp. 15, 16. In this letter, Mayfield acknowledged

receipt of Lagrone's August 7 letter and advised him that plaintiff had "decided to accept [Lagrone's] offer to settle this claim in the amount of $8,000." Mayfield characterized his response as "an unconditional acceptance of [Lagrone's] offer." A copy of this letter is included as Appendix B to this opinion.

In a letter to Mayfield also dated August 8, Lagrone acknowledged receipt of Mayfield's hand-carried letter of August 8 and stated that Liberty Mutual had no intention of paying Mayfield or his client any money in view of the Commission's decision in favor of Liberty Mutual and Marshall Durbin and against plaintiff. A copy of Lagrone's August 8 letter is attached hereto as Appendix C. In a letter dated August 9, Lagrone advised Mayfield that "all offers are withdrawn." A month later, in a letter dated September 17, Mayfield advised Lagrone that the plaintiff remained willing to settle the claim for $8,000.00. In a September 25 response, Lagrone advised Mayfield that he did not receive Mayfield's August 8 letter until after the Commission had made its decision.

Plaintiff filed suit in this court alleging that the correspondence between Lagrone and Mayfield constituted a valid and enforceable contract to settle the claim. He seeks $8,000.00 in actual damages and $80,-000.00 in punitive damages. Presently before the court is the motion of defendant for summary judgment on all issues or, in the alternative, on the issue of punitive damages. Pending in the Circuit Court of Lee County, Mississippi, is plaintiff's appeal of the ruling of the Workers' Compensation Commission.

## II. CONTENTIONS OF THE PARTIES.

Defendant offers several alternative bases which it argues would permit the court to render summary judgment in its favor. First, Liberty Mutual contends that Lagrone's August 7 letter to Mayfield, attached hereto as Appendix A, did not contain an offer to compromise and settle plaintiff's workers' compensation claim. Alternatively, defendant argues that if said letter did contain an offer, then Mayfield's letter of August 8 to Lagrone, attached hereto as exhibit B, did not form a contract since there was no meeting of the minds. Defendant further contends that if the correspondence between Lagrone and Mayfield formed a contract, such contract is voidable due to mistake. Alternatively, defendant contends that if the correspondence between Lagrone and Mayfield formed a contract, it was not final and enforceable until approved by the Mississippi Workers' Compensation Commission. Finally, defendant argues that there is no basis for an award of punitive damages.

Plaintiff, on the other hand, contends that the Lagrone letter of August 7 created a power of acceptance which was exercised by Mayfield in his August 8 letter to Lagrone. Plaintiff also disputes defendant's assertion of mistake and its argument against imposition of punitive damages.

## III. CONCLUSIONS OF LAW.

Jurisdiction is conferred on this court by 28 U.S.C. § 1332. Plaintiff is an adult resident citizen of the State of Mississippi, and defendant is a corporation organized and incorporated in the State of Massachusetts with its principal place of business in the State of Massachusetts. The amount in controversy exceeds the sum or value of $10,000.00, exclusive of costs and interests.

For an offer to be valid under Mississippi law, it must be clear, definite, and complete. *Williams v. Favret,* 161 F.2d 822, 824 (5th Cir.1947); *J. Russell Flowers, Inc. v. Itel Corp.,* 495 F.Supp. 88, 92 (N.D.Miss.1980). In his August 7 letter to Mayfield, included herein as Appendix A, Lagrone stated: "I am in a position to settle this case with you at the level of $8000.00 and will agree to pro-rate the settlement amount on a 2–6 basis." Lagrone also indicated a willingness "to recommend that Liberty pay whatever medical is outstanding and unpaid for which it would be liable under Section 7 of the Act." Defendant argues that the language "position," "level," and "willingness to recommend" demonstrates a willingness to continue ne-

gotiations but does not constitute a clear, definite, and complete offer.

Although Lagrone claims that it was not his intent to make a firm offer of settlement, *see* deposition of Lagrone, pp. 39–40, it is one's objective manifestations, not one's subjective intent, which determines whether an offer was made. The court is of the opinion that the August 7 letter from Lagrone to Mayfield contained an offer of settlement which was sufficiently clear, definite, and complete. The language used would indicate to any reader that the writer was offering $8,000.00 on a 2–6 basis to settle the pending claim and that the writer would recommend payment of certain medical expenses. The language is unambiguous, the amount proposed is definite, and the terms are complete.

The court is further persuaded upon review of the surrounding circumstances that a valid offer was made by Lagrone. Both Herrington and Lagrone had previously made offers to settle the claim for $8,000.00 plus Liberty Mutual's consideration to pay the outstanding medical bill. *See* deposition of Herrington, p. 13; deposition of Mayfield, pp. 13–14, 20; deposition of Lagrone, p. 12. Upon cross-examination in his deposition, Lagrone admitted that there was "no question about the fact that we had made that offer," *see* deposition of Lagrone, p. 48, and that both he and Mayfield knew that Lagrone had the authority from Liberty Mutual to extend such an offer. *See* deposition of Lagrone, pp. 33, 49, 50; deposition of Mayfield, pp. 11, 22; deposition of Herrington, p. 25. Accordingly, upon review of the language in Lagrone's August 7 letter and the surrounding facts and circumstances, the court finds that the August 7 letter from Lagrone to Mayfield constituted a valid offer of settlement.

Defendant next contends that if there was an offer, then Mayfield's letter of August 8 did not form a contract because there was no meeting of the minds. In support of this argument, defendant points solely to the fact that Mayfield did not understand what the term "on a 2–6 basis" meant. *See* deposition of Mayfield, p. 10.

It is well established in Mississippi that to make a contract by correspondence, one party must make a proposition and the other accept the same as made; in other words, the minds of the parties must meet upon a definite proposition, and the acceptance of the proposal must be made. *Hollister v. Frellsen*, 148 Miss. 568, 114 So. 385, 386 (1927).

■ In his letter of August 8 to Lagrone, included herein as Appendix B, Mayfield used clear, unambiguous language: "Mr. Morris has decided to accept your offer to settle this claim...." He also stated that "[t]his is an unconditional acceptance of your offer." Despite the fact that Mayfield admittedly did not understand the meaning of "a 2–6 basis," *see* deposition of Mayfield, p. 10, he understood that Liberty would pay $8,000.00 and that Lagrone would be willing to recommend that Liberty pay other medical expenses incurred by plaintiff. *See* deposition of Mayfield, pp. 10–12. Mayfield was willing to accept Lagrone's offer unconditionally on the terms offered in the August 7 letter. Accordingly, the court is of the opinion that there was a meeting of the minds in this transaction. Mayfield's lack of understanding of a small portion of the offer does not preclude a finding that the parties' minds met on this agreement.

■ Defendant next submits that if the correspondence between Lagrone and Mayfield formed a valid contract, then it is voidable due to mistake on the part of Lagrone and Liberty Mutual. The mistake referred to by defendant is the fact that the Workers' Compensation Commission issued its ruling in favor of defendant and against plaintiff on August 6, one day before defendant issued its offer to settle plaintiff's claim for $8,000.00. The attorneys for the parties did not receive the decision of the Commission until August 8, the day after the offer of settlement was made. *See* deposition of Lagrone, p. 34; deposition of Mayfield, pp. 13–14.

Courts have traditionally been reluctant to allow a party to avoid a contract on the ground of mistake, even as to a basic assumption, if the mistake was not shared by the other party. Nevertheless, relief has been granted where the other party actual-

ly knew or had reason to know of the mistake at the time the contract was made. *See generally* Restatement (Second) of Contracts § 153 (1981) (describing when mistake of one party makes a contract voidable). The general rule in Mississippi is that equity will not grant relief from a mistake if that mistake is merely the result of inattention, personal negligence, or misconduct on the part of the party applying for relief. *Highlands Ins. Co. v. Allstate Ins. Co.*, 688 F.2d 398, 401 (5th Cir.1982); *Sacred Heart Southern Missions, Inc. v. Terminix International, Inc.*, 479 F.Supp. 348, 350–51 (N.D.Miss.1979); *Hunt v. Davis*, 208 Miss. 710, 45 So.2d 350, 352 (1950); *Wall v. Wall*, 177 Miss. 743, 171 So. 675, 677 (1937). In *Mississippi State Bldg. Comm'n. v. Becknell Constr., Inc.*, 329 So.2d 57, 60–62 (Miss.1976), the Mississippi Supreme Court stated that where one party seeks to take advantage of the other through the other's mistake, the mere fact that the mistake was due to some degree of negligence will not preclude relief. Under certain conditions, the court may excuse the responsible party. *See Highlands*, 688 F.2d at 401 (citations omitted); *Terre Haute Cooperage, Inc. v. Branscome*, 203 Miss. 493, 35 So.2d 537, 540–41 (1948).

It is undisputed that neither party had knowledge of the August 6 Commission decision at the time Lagrone issued the offer of settlement to Mayfield in the August 7 letter. *See* deposition of Mayfield, pp. 13–14 (indicating that Mayfield was first informed of order on August 8); deposition of Lagrone, p. 34 (indicating that Lagrone was first informed of ruling on August 8). At the time Lagrone dictated the August 7 letter, he had no knowledge of the Commission's ruling in favor of his client. *See* deposition of Lagrone, pp. 13–14. When Mayfield discovered that the Commission had found against his client, he contacted his client, and they agreed that Mayfield should attempt to obtain the $8,000.00 offered by Liberty Mutual. *See* deposition of Mayfield, pp. 14–16. Mayfield then drafted his August 8 letter to Lagrone and had it hand-delivered to Lagrone's office. *See* deposition of Mayfield, p. 16; deposition of Lagrone, pp. 34–35. Lagrone had received knowledge that the

Commission had ruled in favor of his client before he received Mayfield's August 8 letter. *See* deposition of Lagrone, pp. 34–35. It is undisputed that Mayfield first sought to accept the offer only after he received notice of the Commission's ruling against his client. *See* deposition of Mayfield, p. 20.

Upon receipt of Mayfield's letter, Lagrone handwrote a cryptic note at the bottom of the letter: "Sorry, it won't work, old Boy. Lagrone," made a photocopy of the letter, and returned the original to Mayfield. *See* deposition of Lagrone, p. 41. On the same day, August 8, Lagrone issued a letter to Mayfield in which he acknowledged receipt of Mayfield's letter and stated that Liberty Mutual had "no intention of paying you any money after the Commission's decision." *See* Appendix C to this opinion; deposition of Lagrone, p. 41; deposition of Mayfield, pp. 16–17. On the following day, August 9, Lagrone issued another letter to Mayfield stating that "all offers are withdrawn."

The record indicates that Lagrone reacted promptly upon receipt of the Commission's ruling in favor of his client. He hand-wrote a note on Mayfield's letter to him on August 8, issued a letter to Mayfield on August 8, and issued a second letter to Mayfield on August 9.

The court is of the opinion that the offer extended by Lagrone on August 7 was not the result of gross negligence or willful neglect. Immediately upon discovering the mistake, Lagrone advised Mayfield three times that the Commission's ruling had significantly and dramatically affected the offer contained in his August 7 letter. This prompt response by Lagrone does not preclude relief.

The court is further persuaded by Lagrone's August 7 letter to the Worker's Compensation Commission advising that the parties were near settlement and requesting that a decision be withheld until further notification by the parties. This indicates that a decision by the Commission was of material importance and would have a significant impact on the offer of settlement. Although permitting plaintiff to recover $8,000.00 after the Commission has

concluded that he is entitled to no relief from his employer cannot be characterized as unconscionable,[1] it is a contract which the Mississippi courts would seek to prevent. Accordingly, the court is of the opinion that the unilateral mistake made by Liberty Mutual through its counsel, Lagrone, does not preclude relief under the facts of this case.

Because the issue of unilateral mistake resolves the question of law in this case, the court finds no need to address the other contention of defendant. Since plaintiff has failed to establish and prove that he is entitled to actual damages, then his claim for punitive damages must also fail. *See, e.g., Vidrine v. Enger*, 752 F.2d 107, 110 (5th Cir.1984); *Ross v. Deposit Guar. National Bank*, 400 F.Supp. 45, 52 (S.D.Miss. 1974); *T.G. Blackwell Chevrolet Co. v. Eshee*, 261 So.2d 481, 485 (Miss.1972).

## IV. SUMMARY.

Upon review of the record in this case, including the depositions of Herrington, Mayfield, and Lagrone, the court is of the opinion that Lagrone made an offer of settlement to Mayfield in the August 7 letter. The court further concludes that Mayfield made a valid acceptance in his letter issued August 8. However, the contract is voidable by Liberty Mutual due to a unilateral mistake on the part of Lagrone, for which he was not negligent, inattentive, or involved in any misconduct. No punitive damages are warranted since plaintiff has failed to recover actual damages.

An order in conformance with this opinion shall issue.

## APPENDIX A

MITCHELL McNUTT, BUSH LAGRONE & SAMS

PROFESSIONAL ASSOCIATION

ATTORNEYS AT LAW

August 7, 1985

Honorable Kenneth Mayfield
Attorney at Law
Post Office Box 1581
Tupelo, Mississippi 38802–1581

RE: John Thomas Morris v.
　　Marshall Durbin

Dear Ken:

I am in a position to settle this case with you at the level of $8,000.00 and will agree to pro-rate the settlement amount on a 2–6 basis. With respect to medical expenses, I would be willing to recommend that Liberty pay whatever medical is outstanding and unpaid for which it would be liable under Section 7 of the Act. I believe that Dr. Neely's charges would eventually be paid.

I am notifying the Commission that we are very close to settlement and that they should withhold an Order until we can make a firm announcement.

　　Yours very truly,
　　MITCHELL, McNUTT,
　　BUSH LAGRONE
　　& SAMS
　　Wade H. Lagrone

## APPENDIX B

Mayfield & Associates, P.A.

ATTORNEYS AT LAW

PROFESSIONAL PLAZA

106 W FRANKLIN ST.

## TUPELO, MISSISSIPPI

August 8, 1985

Honorable Wade Lagrone
Attorney at Law
P.O. Drawer 684
Tupelo, MS 38802

Re: John T. Morris v. Marshall Durbin

Dear Wade:

I hereby acknowledge receipt of your letter dated August 7, 1985.

Please be advised that Mr. Morris has decided to accept your offer to settle this

---

1. An "unconscionable" contract is one such as no man in his senses and not under a delusion would make on the one hand, and as no honest and fair man would accept on the other. *Highlands*, 688 F.2d at 402 n. 5; *Terre Haute*, 35 So.2d at 541.

claim in the amount of $8,000. This is an unconditional acceptance of your offer. It is not contingent on payment of Dr. Neely's bill.

Please prepare a PETITION FOR 9(i) SETTLEMENT. Thank you.

Sincerely,
/s/ Kenneth Mayfield
Kenneth Mayfield

## APPENDIX C

MITCHELL, McNUTT, BUSH, LAGRONE & SAMS

PROFESSIONAL ASSOCIATION

ATTORNEYS AT LAW

August 8, 1985

Honorable Kenneth Mayfield
Attorney at Law
Post Office Box 1581
Tupelo, Mississippi 38802–1581

RE: John T. Morris v.
Marshall Durbin
MWCC No. 82 06784–C–3717

Dear Ken:

This is to acknowledge your hand carried letter of today delivered at approximately 3:30 P.M. attempting to accept an alleged settlement offer after the award denying your claim was entered and mailed. We have no intention of paying you any money after the Commission's decision. Sorry, but it won't work.

Yours very truly,
MITCHELL, McNUTT,
BUSH LAGRONE
& SAMS
Wade H. Lagrone