329 So.2d 57 (1976)
MISSISSIPPI STATE BUILDING COMMISSION, Appellant,
v.
BECKNELL CONSTRUCTION, INC. and St. Paul Fire & Marine Insurance Company, Appellees.
No. 48460.
Supreme Court of Mississippi.
March 16, 1976.
Rehearing Denied April 13, 1976.
*58 A.F. Summer, Atty. Gen. by Donald Clark, Jr., Sp. Asst. Atty. Gen., Jackson, Delos H. Burks, Picayune, for appellant.
Heidelberg, Woodliff & Franks, Sam E. Scott, Jackson, for appellees.
Before PATTERSON, P.J., and ROBERTSON and SUGG, JJ.
PATTERSON, Presiding Justice, for the Court:
The Mississippi State Building Commission brought suit for bond forfeiture against Becknell Construction, Inc. and St. Paul Fire & Marine Insurance Company. The defendants successfully moved to transfer the cause from the Circuit Court of the First Judicial District of Hinds County to the Chancery Court upon equitable defenses. From an adverse decree of the Chancery Court, the Mississippi State Building Commission appeals. We affirm.
In February and March of 1972 the State Building Commission published advertisements for bids for the construction of a classroom building at Jackson State College. The bids were to be finally accepted on March 21, 1972, at 2:00 p.m. Included in the bid process was the requirement of a certified check or acceptable bid bond in an amount equal to five percent (5%) of the base bid. This security for serious bidding was to be forfeited as liquidated damages by the successful bidder who failed or declined to execute a contract in accordance with his bid.
Henry Osborn compiled Becknell's bid on the Jackson State building. He completed the figures and filled in the base price, in numbers and words, on the bid form while being driven to the Woolfolk State Office Building on March 21, 1972, just prior to 2:00 p.m. After the bids were submitted he remained in the office of the building commission until all of the bids were opened and copied the amount of each as they were announced. After hearing Becknell's bid read aloud, he realized, in accord with his testimony, the bid was one hundred thousand dollars ($100,000) less than intended due to his erroneous transposition of figures from his work sheet to the bid form while enroute from his place of employment to the State Office *59 Building. He immediately called Becknell, his superior, and informed him of the alleged mistake.
Becknell checked Osborn's bid estimates and called James G. Chastain, the Executive Director of the Mississippi State Building Commission, and notified him of the mistake the same day. At 8:00 o'clock the next morning W.H. Fanning, Jr., a vice-president of Becknell, met with Chastain in the director's office and delivered a letter to him in explanation of the mistake on the bid form, as well as a copy of the estimate work sheet. He also inquired if a meeting with the State Building Commission was necessary to explain the mistake and was advised that the meeting was not essential. The essence of the letter was, "The correct amount of the bid was, to have been $2,219,500.00, however, in transposing it was written in as $2,119,500.00. After your careful study of the documents presented with this letter, we will certainly appreciate your consideration in granting our request to withdraw our bid without penalty."
Chastain was unable to reconcile the figures of the work sheet to the sum of the bid. The commission, therefore, awarded the contract to Becknell at its next regular meeting without requesting an explanation of the figures from Osborn or others.
Becknell refused the contract and it was thereafter awarded to the second lowest bidder, and this action was instituted for recovery on the bond. As mentioned, a motion to transfer to the chancery court was filed and at that time another work sheet of Osborn, the bid estimator of Becknell, was placed into evidence. Its figures are somewhat different from those on the work sheet that was attached to the letter previously delivered to the building commission. We observe also that during the course of the trial a third work sheet was placed in evidence. It also differed from the other work sheets. The discrepancies in the work sheet figures, however, were not made the basis for charging fraud against Becknell and, indeed, in response to an interrogatory the commission concedes that lack of good faith has not been charged, and succinctly sets forth the state's position. It follows:
34. State the reasons and circumstances that led the State Building Commission to conclude Becknell was not acting in good faith and exercising ordinary care.
34. Lack of good faith has not been charged. It has been the position of the State Building Commission throughout this controversy that, once a bid that is legal on its face has been tendered, received and opened, and in the absence of statutory authority, it would be unlawful for the State Building Commission to permit a contractor to alter or amend its bid or to be permitted to withdraw the same.
The cancellor found that an honest mistake had been made in the bid. The language below expressed his views:
... In this cause, there has been no attack whatsoever on the reputation or honesty or integrity of the Defendant Becknell Construction, Inc. or the Defendant St. Paul Fire and Marine Insurance Company, or any of its officers, agents or personnel, which leaves only the idea that if an error was made, it was an honest mistake.
The commission's bill of complaint was dismissed, and the bid bond filed by Becknell was cancelled in accord with the prayer of the cross-complaint of the respondents.
It is contended that the trial court erred by substituting its judgment for that of the State Building Commission in determining the lowest and best bid was not that of Becknell. The commission cites Parker Bros. v. Crawford, 219 Miss. 199, 68 So.2d 281 (1953), wherein it is held that public boards are vested with a sound discretion in determining who is the "lowest *60 and best bidder," and their decision, when based on an honest and reasonable exercise of the vested discretion will not be interfered with by the courts. We adhere to this principle, and when the discretion is properly exercised, the courts will not interfere with the judgment of a public board.
We note, however, that the building commission did not formally meet or otherwise afford Becknell an opportunity to explain the work sheet, or sheets, antecedent to its bid. It was aware that inquiry had been made to this end and Chastain, executive director of the commission, had advised Becknell that an appearance was unnecessary. The commission, though promptly notified of the claimed mistake, had before it only the letter of Becknell and the first unexplained work sheet when the contract was awarded. We are not persuaded by the appellant's argument that the trial court was substituting its judgment for the State Building Commission when it declined to impose the liquidated damage feature of the bond for Becknell's declination of the contract. The court was not sitting on appeal to review an administrative order or finding and hence was not restricted to the confines of the record evidence, the bid, the letter characterizing the mistake and the figures of the first work sheet, as was the commission. It was sitting as a trial court in a suit instituted by the commission to determine on the merits from the evidence before it whether Becknell's claim of honest mistake was reasonable and justified. It had evidence before it in dismissing the commission's suit that was not before the commission at the time it awarded the contract. These circumstances, in our opinion, do not support the argument of substitution of judgment as contended by the appellant.
The appellant next contends that the negligence of Becknell caused the mistake and thereby established its liability under the bond. Osborn claimed to have made the error in transposing the figures from the work sheets to the bid document. He testified in part:
Q. What you'd claim to this court now to be a mistake really was a little bit of carelessness, wasn't it?
A. It could be construed as stupidity or carelessness or even negligence, if we so elected to use those terms, because of my thirty years I have only had one other occasion of this in my life span.
Hunt v. Davis, 208 Miss. 710, 45 So.2d 350 (1950), citing Wall v. Wall, 177 Miss. 743, 171 So. 675 (1937), is urged in support of this point. We there stated:
... [M]istake "to constitute equitable relief, must not be merely the result of inattention, personal negligence, or misconduct on the part of the party applying for relief." (208 Miss. at 725, 45 So.2d at 352).
Hunt arose from a dispute on the quantity of mineral acres intended to be purchased by one litigant and sold by the other. Wall sought to reform a deed to accord with the alleged intention of the parties. The rule announced in Hunt through Wall is undoubtedly correct. Its application, however, is not always mandated, but must be judged from the particular factual circumstance before a court. More apropos to the present situation is the rule found in Terre Haute Cooperage, Inc. v. Branscome, 203 Miss. 493, 35 So.2d 537 (1948), wherein we held, in a suit for the rescission of a timber deed, that equity will grant appropriate relief for a unilateral mistake in proper cases.
We find persuasive State Highway Commission v. State Construction Co., 203 Or. 414, 280 P.2d 370 (1955), a case concerning similar facts to the present, in which equity prevailed. It states:
"But where the mistake is of so fundamental a character, that the minds of the parties have never, in fact, met; or where an unconscionable advantage has been gained, by mere mistake or misapprehension; *61 and there was no gross negligence on the part of the plaintiff, either in falling into the error, or in not sooner claiming redress; and no intervening rights have accrued; and the parties may still be placed in statu quo; equity will interfere, in its discretion, in order to prevent intolerable injustice. This is the clearly defined and well established rule upon the subject, in courts of equity, both in England and America." (203 Or. at 435, 280 P.2d at 380).
* * * * * *
"The appellants in the case before us fall within the rule. By mistake and inadvertence, they put in a bid for a piece of work for a sum much less than they intended to bid for it, and for a sum much less than that for which the work could be performed without loss. The mistake was not due to their willful neglect; nor will the granting relief from the mistake cause the other persons interested any serious loss, other that they will be deprived of the gain to be derived from a forfeiture of the check. But this latter is not a loss or injury, within the meaning of the rule, and is not a ground for denying relief." (203 Or. at 436, 280 P.2d at 381).
In the instant case the defendant Construction Company made a serious and substantial mistake in its bid; it was an honest mistake, and not one that was intentional nor one due to gross negligence or willful neglect; immediately upon discovering the error, Defendant advised plaintiff thereof and sought to withdraw its bid. The bid had not then been accepted nor had the other bids been rejected. Plaintiff had in nowise changed its position because of the mistake. In everything it did defendant acted in good faith. It is manifest that it never intended to submit a bid without including therein the cost of the necessary steel sheet piling. When plaintiff assumed to accept the bid no meeting of the minds occurred... . (203 Or. at 436, 437, 280 P.2d at 370).
See also Cataldo Construction Co. v. County of Essex, 110 N.J. Super. 414, 265 A.2d 842 (1971), and Smith & Lowe Construction Co. v. Herrera, 79 N.M. 239, 442 P.2d 197 (1968).
The record unquestionably reveals that negligence caused the mistake. Implicit in the very definition of "mistake" is some degree of negligence. Human failing is its essence and it denotes an error of judgment. Nevertheless, it still remains the obligation of a court of equity to determine whether, despite such misjudgment, it would be inequitable and fundamentally unjust not to grant relief from honest but negligent mistake. Cataldo, supra. The present mistake was promptly called to the attention of the commission before the contract was let and at a time when the status quo could have been restored without substantial injury to the parties. The loss of windfall gain arising from negligent mistake, which does not appear from the record, in our opinion, to be either willful or gross, does not preclude equitable relief.
It is next urged that we should reverse because the trial court's decision does not follow City of Hattiesburg v. Cobb Bros., 183 Miss. 482, 184 So. 630 (1939), wherein we stated:
The letting of public contracts by competitive bidding is for the protection of the public, and the public authorities are without the right to permit a bid for the contract to be withdrawn in the absence of circumstance that would render it inequitable not to permit its withdrawal. The inequitable circumstance here claimed is an honest mistake in determining the amount of the bid. Unless the mistake was in fact made, and honestly made, no right of withdrawal would appear. In determining whether to permit the withdrawal of this bid, the Mayor and Commissioners were under the duty to the public to ascertain whether a mistake affecting the amount of the bid had in fact been made. In order to *62 do this, it was necessary for them to be advised of the character of the claimed mistake, so that they might consider it in connection with the bid and the advertisement therefor. The mere claim that a bidder has "made a mistake" or "found some error" in his bid neither gives him the right to withdraw his bid nor imposes on the public authorities any duty to examine the bid in order to ascertain whether a mistake appears therein. Another reason for requiring the character of the mistake made to be set forth in a notice of withdrawal of a bid is that, in an action to rescind the contract made by the acceptance of the bid and to recover a benefit conferred by the bidder on the other party to the contract, the bidder may be confined to the particular mistake claimed to have been made when the notice of withdrawal was given. (183 Miss. at 494-95, 184 So. at 631-32.)
Becknell's prompt notice to the commission unquestionably influenced the trial court in its determination that an honest mistake had been made. As we read Cobb, it requires the bidder who claimed the mistake to advise the public body who had requested bids the character of the mistake claimed so that it might be considered in connection with the bid and the advertisement. It also confines the claimant to the specific mistake claimed when the notice to withdraw the bid was made. The Court sought to eliminate, in our view, false claim or frivolous error. Cobb placed upon the mayor and commissioners the duty to ascertain whether a mistake affecting the amount of the bid had in fact been made.
The statement in Cobb that public authorities are under no duty to examine the bid in order to ascertain whether a mistake appears, means that the claimant has the onus or burden of going forward with the evidence to prove the reasonableness of the mistake. Otherwise, the opinion contradicts itself inasmuch as it places a duty upon public authority, but withdraws from public authority the means to fulfill the duty. We conclude that Cobb, supra, permits evidence to be presented in support of a mistake once its character has been promptly established, as was done in this instance.
The final contention is that the conclusion of the chancellor was manifestly wrong. The record discloses ample evidence, in our opinion, to support the finding of the chancellor that Becknell made an honest mistake in its bid. It is true that the figures of the work sheets differ and that from them the amount of the bid cannot be substantiated mathematically. However, this is counterbalanced by the promptness of notification of the mistake, the letter in evidence designating the character of the mistake, the work sheet in support of it, and inquiry of the director toward a commission hearing, undoubtedly to offer further evidence and explanation of the mistake, which was not thought to be essential by the director.
Moreover, Becknell was not charged with bad faith in withdrawing its bid. The record does not disclose, in our opinion, evidence supporting a finding of bad faith, nor did the chancellor so find. This was sufficient to sustain the chancellor's finding and we cannot state, nor do we think we should, that he was manifestly wrong.
The fear advanced by the appellant that the doors will be opened whereby future bidders on public contracts may defraud the public is somewhat persuasive, but we think it overlooks the ability of the commission and the courts to deal with these situations when and if they arise. Certainly this argument cannot now inject fraud into the withdrawal of the present bid. The possibility of future fraud does not establish a present fact.
AFFIRMED.
GILLESPIE, C.J., INZER, P.J., and ROBERTSON, and WALKER, JJ., concur.
*63 SUGG, SMITH and BROOM, JJ., dissent.
SUGG, Justice (dissenting):
I dissent because there was insufficient evidence to support the chancellor's finding of fact.
On March 22, 1972, one day after the bids were opened, the Building Commission received a letter from Becknell enclosing a copy of a rough draft of the bid proposal and the estimate sheets used in preparing the bid. Becknell contended that the error occurred in transposing the amount of their bid from the estimate sheets to the proposal.
On March 30, 1972 James G. Chastain, Executive Director of the Building Commission, notified Becknell that the Building Commission subcommittee had considered Becknell's letter and attachments and requested that Becknell either proceed with the work based on the bid submitted or forfeit the amount of the bid bond.
In a letter dated April 6, 1972 Becknell declined to enter into the contract for $2,119,500.00, which was the amount of their bid, and also requested that their bid bond be returned.
The Commission, after considering the estimate sheets for the claim of Becknell, found that the figures on the estimate sheet did not total $2,219,500.00 as claimed by Becknell, and did not total $2,119,500.00, the amount shown on Becknell's bid. In that situation the Commission found that the claim of alleged error was not supported by the documents submitted, declined to permit Becknell to withdraw its bid in the amount of $2,119,500.00, declined to increase the bid by $100,000.00, and declined to permit a return of Becknell's bid bond.
In City of Hattiesburg v. Cobb Bros. Const. Co., 183 Miss. 482, 184 So. 630 (1938), this Court stated:
The appellant's duty was to act on the notice as given, and it was under no duty to advise the appellee what the notice should contain in order to be effective. (183 Miss. at 495, 184 So. at 632).
In the Hattiesburg case, the Court simply held that the City was under no duty to advise Cobb Bros. what proof was necessary to substantiate their claim in support of their request to withdraw their bid.
Becknell claimed that it had a right to withdraw its bid on its naked assertion that a $100,000.00 error was made in transferring the amount of its bid from its estimate sheets to the bid proposal filed with the Commission.
At the hearing in chancery court this is the sum total of all the evidence offered on behalf of Becknell. In my opinion this was not sufficient because Becknell should have substantiated the accuracy of each of the items shown on its estimate sheets. The estimate sheets and three photo copies of it were before the chancery court. The majority opinion notes that none of the three photo copies agree with each other or with the original estimate sheet.
According to the original estimate sheets the subtotals of direct job cost[1] consisted of the following items:

 Labor $ 261,900.00
 Materials 487,100.00
 Sub-Work 1,248,900.00
 _____________
 Total $1,997,900.00[1]
When these sub-totals were transferred to the last sheet by Becknell they were listed as follows:

 Labor $ 261,900.00
 Materials 487,100.00
 Sub-Work 2,248,900.00
 _____________
 Total $1,996,100.00

Obviously on Becknell's original sheet an error was made in transferring subtotals to *64 the last sheet but the error was $1,000,000.00 instead of $100,000.00. In any event the direct job cost of $1,996,100.00 as shown on Becknell's last sheet cannot be obtained by adding any combination of figures shown as a subtotal on the preceding sheet.
It was the duty of Becknell to establish before the Commission and also before the chancery court the accuracy of the various items shown on the estimate sheet. Since more than 50% of the job cost consisted of items that were to be subcontracted by Becknell, it should have presented in evidence proposals that it received from its subcontractors. I know of no other method by which Becknell could properly substantiate the amount that it claimed for subcontracts. It should also have established the material costs shown on its estimate sheets by listing quotations which it received from vendors of the building materials. This information on which Becknell based its bid was available to it because such information was necessary for the preparation of its estimate sheets. The correctness of each of the items on the estimate sheets were easily capable of proof. Absent this proof no credence should be given to Becknell's unsupported claim of mistake.
There is a term in the contracting business known as "leaving money on the table." This occurs when a low bidder submits a bid considerably lower than the next lowest bid. The requirement that bidders claiming a mistake substantiate a claimed mistake has as its purpose defeating the possibility of a bidder recovering "money left on the table."
When all of the evidence is analyzed it amounts to nothing more than a claim by Becknell that it made an error in transferring the amount of its bid from the estimate sheets to the bid proposal. Becknell made no effort to justify or prove the correctness of the items on the estimate sheets. The claim of an error in transferring figures from estimate sheets to a bid proposal, standing alone, is not sufficient to entitle Becknell either to change the amount of its bid, or withdraw it.
I would reverse and render judgment for the Building Commission.
SMITH and BROOM, JJ., join in this dissent.
NOTES
[1] The total bid consisted of direct job cost plus payroll, taxes, builders risk, building permit, state taxes, fee of 5% and bond premium. Most of the items added to direct job cost are computed on the amount of direct job cost.