United States Court of Appeals,

Fifth Circuit.

No. 91–1486.

CROSBY–MISSISSIPPI RESOURCES, LTD., Plaintiff–Appellant/Cross Appellee,

v.

PROSPER ENERGY CORPORATION, et al., Defendants–Appellees/Cross Appellants.

Oct. 8, 1992.

Appeals from the United States District Court for the Southern District of Mississippi.

Before, BROWN, GARWOOD and EMILIO M. GARZA, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Crosby–Mississippi Resources, Ltd. (CMR) brought this action to recover royalty payments alleged to be due pursuant to a joint operating agreement (JOA) executed between CMR and the defendants (collectively Prosper). Following a bench trial, the district court, finding that Prosper had committed a unilateral mistake in its interpretation of the agreement, rescinded the JOA and dismissed CMR's complaint for damages. CMR appeals this judgment, and Prosper cross-appeals the district court's denial of its alternative affirmative defense of mutual mistake. We affirm.

Royalty interest dispute

CMR owns unleased mineral interests in numerous sections of the Poplarville Field in Pearl River County, Mississippi. Prosper[1] sought to develop several gas wells in the Poplarville Field and, as early as 1979, began negotiating with CMR and Exxon[2] to reach an agreement securing their participation in the Prosper venture. These negotiations ultimately proved unsuccessful. On

---

[1]Prosper is one of the independent oil and gas companies owned and operated by the Hunt family of Dallas, Texas. The other parties appearing as defendants and appellees/cross-appellants under the name Prosper are Petro–Hunt Corporation and Propel Energy Company, a partnership composed of three trusts for the benefit of Hunt family members.

[2]CMR and Exxon were parties to an exploration agreement between themselves. That agreement, however, is not at issue in this case. Furthermore, Exxon, although a signatory to the JOA on which CMR's claim is based, is not a party to this suit.

December 20, 1984, however, Prosper obtained an order from the Mississippi Oil & Gas Board allowing the forced integration of CMR's interest in the first of several wells to be drilled by Prosper in the Poplarville Field, the Southern Mineral 27–7 well (27–7 well). The JOA for this well is the subject of this action.[3] Because CMR refused to participate in Prosper's continued development of the Poplarville Field, Prosper, on a well-by-well basis, obtained orders from the Mississippi Oil & Gas Board force po oling eight other wells in which CMR owned mineral interests. Under Mississippi statutory law, a non-consenting owner of unleased mineral interests, as CMR is here, is not entitled to receive payments from production until 250% of costs and expenses of drilling and completing the well have been recovered out of that non-consenting owner's share of production. Miss.Code Ann. § 53–3–7(2)(a), (g) (1990).[4] Ultimately, CMR chose to participate as a working interest owner in seven of these nine wells, choosing to pay its proportional share of drilling and completing costs in exchange for receiving an immediate share of production payments, free from the 250% penalty.[5]

Although CMR was obligated to pay its share of expenses for the seven wells in which it was a participating working interest owner, CMR withheld payment until a JOA could be executed to

---

[3]A JOA or joint operating agreement is a written contract between the operator of the well (Prosper) and the owner(s) of the working interests of the well (CMR).

[4]The statute in effect penalizes those parties who choose to not participate in production by withholding from that party any benefit or interest until 250% of production and completion costs (which would have been chargeable to the nonconsenting owner's nonconsenting share) have been recovered. Miss.Code Ann. 53–3–7(2)(g)(ii) (1990). The obvious intent of the statute is to encourage unleased mineral interest owners to participate in the development of their interests, thereby preventing waste and avoiding the drilling of unnecessary wells. Miss.Code Ann. 53–3–7(1)(a) (1990).

[5]Pursuant to Section 53–3–7, once a forced integration order is filed for record before the Mississippi Oil & Gas Board, the *non*consenting owner (CMR) has 20 days to file an acceptance in writing with the Board agreeing to participate in the development and operation of the well on the same cost basis as the consenting owner (Prosper). Miss.Code Ann. 53–3–7(2)(g)(iii) (1990). Ultimately, CMR agreed to participate as a consenting owner in seven of Prosper's nine wells.

       In addition to the 27–7 well, therefore, CMR did not participate in one other well. For reasons of timing, however, the statutory penalty provision governing that well was 100% rather than 250%. The 27–7 well, therefore, was the only well for which, under the statute and forced pooling order, CMR was to receive no royalty or production payment until 250% of the production costs attributable to CMR's share had been recovered. Miss.Code Ann. 53–3–7(2)(g)(ii) (1990).

govern the well operations. The parties initially sought to enter into a single JOA covering all nine wells and, unable to come to terms on such a comprehensive agreement, ultimately executed nine separate JOAs, one for each well.[6]

Although the forced pooling order for the 27–7 well was entered on December 20, 1984, it was not until April 20, 1987 that the negotiations over this well culminated in the JOA. The effective date of the JOA, however, was pre-dated to November 20, 1984, a date approximately one month before the forced pooling order was entered.[7]

Under the final draft of the 27–7 well JOA, CMR was not to receive a share in the working interest of the well until 250% of its, the nonconsenting owner's, share of production costs had been recovered.[8] The JOA, however, contains no such provision governing royalty payments; the language of the JOA, in fact, does not condition CMR's receipt of royalties at all. That is, under the JOA, CMR is entitled to royalties from the effective date of the agreement and upon the first sales of gas, free from the statute's 250% penalty. Yet despite being immediately entitled to royalty payments under the agreement, CMR sent its first claim for past due royalties to Prosper on December 15, 1988, some nineteen months after executing the 27–7 well JOA. Prosper refused to honor CMR's claim, and, in response, CMR filed this action.

---

[6]For the Southern Mineral 27–7 well, in which CMR elected not to participate but was instead force-pooled by Board order, Prosper's expense obligations and distribution rights were initially defined by Section 53–3–7. CMR and Prosper, however, modified the effect of Section 53–3–7 by subsequently entering into a written JOA, the provisions of which superseded the statute.

[7]The district court found that the sole purpose of the JOA's early effective date was to ensure that Prosper would recover all costs involved in developing the 27–7 well, including those costs incurred in obtaining the forced pooling order. By so dating the JOA, Prosper did not, the Court found, intend to nullify the effect of the statute's 250% penalty provision or to expose itself to a claim for royalty payments prior to "reversion," the moment at which Prosper would recoup 250% of its costs and CMR would be entitled to production payments.

[8]An identical result would be mandated under the statute had the parties not executed the 27–7 JOA. Miss.Code Ann. § 53–3–7(2)(a), (g) (1990).

After CMR filed its complaint seeking royalty payments, Prosper asserted the affirmative defense of unilateral mistake in its second amended answer, seeking rescission of the JOA.[9]  The district court "unreservedly conclude[d] that Prosper intended and believed that under the JOA, royalty payments would not be payable to CMR until 250% payout had been reached."  The court then found that Prosper's failure to find and correct the error in the JOA was at most "an oversight" and not the result of gross negligence.[10]  Because the 27–7 well "never, or only barely, reached payout, and has been plugged and abandoned," the court ruled that rescission of the JOA would restore the parties to status quo.  CMR appeals from a final judgment dismissing its complaint and granting rescission of the JOA.  Additionally, Prosper cross-appeals the district court's refusal to reform the JOA due to the parties' *mutual* mistake.

Unilateral mistake

 We review the district court's findings of unilateral mistake for clear error under F.R.Civ.P. 52(a).  Mississippi law governs this diversity action, and Mississippi courts require that unilateral mistake, like mutual mistake, be proven beyond a reasonable doubt.  *Terre Haute Cooperage v.*

---

[9]Prosper raised two other defenses to the enforcement of the royalty provision.  First, Prosper argued that there existed an oral condition precedent which delayed the effect of the JOA until reversion (when 250% payout had been satisfied).  The district court found this defense meritless since there existed no evidence of any discussion between the parties concerning royalty payments to CMR.

   Prosper's second defense, asserted in its first amended answer, sought to reform the provision in the JOA obligating Prosper to pay royalties as of the effective date based on the parties' *mutual* mistake.  Finding this defense meritless as well, the court held no doubt that Prosper was mistaken about the royalty provision, but was "unable to conclude beyond a reasonable doubt that CMR was similarly mistaken."

[10]The 27–7 well JOA established a working interest and a 3/16th royalty interest as to CMR's unleased mineral interest.  Further, it provided that CMR was not entitled to receive any working interest income nor obligated to bear expenses attributable to any interest until reversion, but made no such condition as to payment for CMR's royalty interest.  Thus, Prosper's error was its omitting language from the JOA conditioning CMR's royalty payments.

   The JOA also provided that the agreement was "dated [the] 20th day of April, 1987, but effective as of the 20th day of November, 1984," such that the effective date of the JOA predated the date of the force-pooling order of the Mississippi Oil and Gas Board.  Thus, under the terms of the JOA, as written, CMR was entitled to receive payment for its 3/16th royalty interest from the effective date of the agreement.

*Branscome,* 203 Miss. 493, 35 So.2d 537, 540 (1948) (claim of unilateral mistake must be proven by same standard of proof as that for claim of mutual mistake); *see Sprow v. Hartford Ins. Co.,* 594 F.2d 418, 422–23 (5th Cir.1979) (claim of mutual mistake must be proven beyond a reasonable doubt).

CMR contends that the district court erred in finding that Prosper had met its burden of proving beyond a reasonable doubt that it was mistaken about the JOA's effect on royalty payments.

The district court, however, "unreservedly conclude[d]" that Prosper intended that the JOA retain the same effect as that of the forced pooling statute:  namely, that royalty payments would not be payable to CMR until reversion.  The court also found that "the matter of royalty payments was never discussed between the parties."

Because this action proceeded as a bench trial, the court heard testimony from the actual negotiators of the JOA.  The court found Prosper's witnesses "stated without equivocation and credibly that Prosper never even considered the possibility of making royalty payments to CMR prior to reversion and certainly never had any intention of paying CMR any royalty payments prior to reversion."[11]  The court also heard testimony from CMR's general partner and signatory to the JOA, Stewart Gammill, who stated that CMR fully expected to receive royalties from the effective date of the JOA.  The court, however, was not persuaded by Gammill's testimony.  Nevertheless, Gammill admitted, and the court found, that after CMR had been force pooled as to the 27–7 well, he requested that CMR be relieved of the penalty provisions of the order or be allowed to enter into a JOA releasing it from the penalty's effect;  Prosper refused both requests.  The court concluded that

[11]The district court assigned overwhelming credibility to the testimony of Prosper negotiators Earnest W. Stewart and Danny Foster, both of whom testified that Prosper would not have executed the JOA had it known of the provision requiring Prosper to make royalty payments during payout.  Additionally, Jim McGowan, vice-president of Petro–Hunt, a Prosper affiliate, the person ultimately responsible for approving the JOA, testified, and the court found "unequivocal," that he "would have preferred to operate with no JOA at all if the alternative were one providing for payment of royalties during payout."

Prosper had little, if any, incentive to release CMR from the effect of the 250% penalty of the forced-pooling order and that Prosper's steadfast refusal to grant such a release was fundamentally inconsistent with the JOA's royalty provision. The court explained this inconsistency by finding beyond a reasonable doubt that Prosper committed a unilateral mistake. In the face of such well-documented and forceful factual findings, none of which are clearly erroneous, F.R.Civ.P. 52(a), we cannot conclude that the district court erred.

## Rescission

CMR next contends that the district court incorrectly applied Mississippi law in equitably rescinding the JOA based on Prosper's unilateral mistake. Specifically, CMR asserts that the district court erred in basing rescission on the four-part test found in *Mississippi State Bldg. Comm'n v. Becknell Constr., Inc.,* 329 So.2d 57, 60 (Miss.1976). The district court, according to CMR, should have, instead, applied *Hunt v. Davis,* 208 Miss. 710, 45 So.2d 350, 352 (1950), to the facts of this dispute. Characterizing *Hunt* as the general rule and *Becknell* as an "extraordinary exception" to the general rule, CMR concludes that had it correctly followed the general rule and applied *Hunt,* the district court would have been compelled to deny Prosper's claim for equitable relief.

## Things change

The test for equitably rescinding a contract due to unilateral mistake in Mississippi has evolved over the last fifty years. Originally, equitable relief for a unilateral mistake was only available under Mississippi law if the mistake did not result merely from "inattention, personal negligence, or misconduct on the part of the party applying for relief." *Wall v. Wall,* 177 Miss. 743, 171 So. 675, 677 (1937). In *Wall,* the complainant sought to reform a deed to reflect the alleged intent of the parties. In denying reformation and enforcing the deed as written, the Supreme Court of Mississippi found no evidence that the warranty deed "was not read and understood by the parties signing same." *Wall,* 171 So. at 677. Considering the question of unilateral mistake, the *Wall* court announced the "inattention, personal negligence, or misconduct" bar to obtaining equitable relief and found that the

complainant's proof necessary to obtain such relief did "not meet these requirements." *Id. Wall,* therefore, established a firmly objective test for denying equitable relief.

A similar objective standard appeared in *Terre Haute Cooperage, Inc. v. Branscome,* 203 Miss. 493, 35 So.2d 537 (1948). In this case where the plaintiff sought cancellation of a timber deed, the Mississippi Supreme Court denied equitable relief on the basis of unilateral mistake because "equity would never give any relief from a mistake, if the party could by reasonable diligence have ascertained the real facts; nor where the means of information are open to both parties and no confidence is reposed." *Terre Haute,* 35 So.2d at 540. Amplifying the standard set forth in *Wall, Terre Haute* expressly relied on an objective test in assessing the culpability of the party seeking rescission:

> Negligence on part of the complainant, contributing to the mistake, will also prevent the securing of relief, the cases are practically unanimous in holding that mistake which results from failure to exercise that degree of care and diligence which would be exercised by persons of reasonable prudence under the same circumstances will not be relieved against. (Citing 9 Am.Jur. *Cancellation of Instruments* § 33).

*Terre Haute,* 35 So.2d at 538–39.

*Terre Haute,* however, recognized the breadth of discretion enjoyed by a court sitting in equity:

> [I]t is not every negligence which will preclude equitable relief; it has been held that relief by way of cancellation will be granted for a unilateral mistake of fact, even though it was due to the negligence of the complainant, if his lack of care did not amount to the breach of a legal duty, or a duty to another, which alone, some courts hold, constitutes culpable negligence, or does not prejudice the other party to the transaction. (Citing 9 Am.Jur. *Cancellation of Instruments* § 33).

*Terre Haute,* 35 So.2d at 539. Thus, the steadfast, objective standard negligence test for denying rescission in Mississippi, the rule of *Wall* and *Terre Haute,* was challenged by the hint of a more forgiving alternative.

In *Hunt v. Davis,*[12] however, the Mississippi Supreme Court again denied equitable relief, using an objective test which penalized the complainants who sought rescission of a mineral deed which conveyed more than they intended because nothing prevented the complainants from reading and examining the deed prior to execution. *Hunt* approvingly cited *Wall* 's "inattention, personal negligence, or misconduct" standard and *Terre Haute* 's "reasonable diligence" standard and predictably denied equitable relief, enlisting almost an estoppel-type reasoning:

> If one does a thing deliberately and intentionally, he may not be heard to say that upon further reflection he may have acted otherwise, or that he entertained a different purpose which he refused or neglected to disclose. Minds must be held by the law to have met in all open covenants openly arrived at.

*Hunt,* 45 So.2d at 352. *Hunt* followed the *Terre Haute* decision by two years, yet nowhere in *Hunt* do we hear any echo of the more relaxed standard which allows equity to grant appropriate relief to a party to a contract for unilateral mistake. *Terre Haute,* 35 So.2d at 541. It is no mystery, then, that CMR champions the *Hunt* decision as the proper law to follow in evaluating Prosper's argument for rescission. Indeed, if the "inattention, personal negligence or misconduct" standard of *Wall* and *Hunt* were to control here, then we would be compelled to hold for CMR. After all, as the district court expressed in its memorandum opinion, "a careful analysis of the various terms of the JOA should have alerted Prosper to its effect on royalty payments[.]" *Hunt* 's clear rule notwithstanding, the Supreme Court of Mississippi has since spoken and it is its more recent rule which we, like the district court, choose to follow.

Along came <u>Becknell</u>

In *Mississippi State Bldg. Comm'n v. Becknell Constr., Inc.,* 329 So.2d 57 (Miss.1976), the Mississippi Supreme Court recognized that "[t]he rule announced in *Hunt* through *Wall* is undoubtedly correct. Its application, however, is not always mandated, but must be judged from the particular factual circumstances before a court." *Becknell,* 329 So.2d at 60. Amplifying *Terre Haute*

---

[12]208 Miss. 710, 45 So.2d 350 (1950).

's recognition of a court's greater discretion to award equitable relief for unilateral mistake in proper cases, *Becknell* announced a new, four-part test:

> [i] But where the mistake is of so fundamental a character, that the minds of the parties have never, in fact, met; or where an unconscionable advantage has been gained, by mere mistake or misapprehension; and [ii] there was no gross negligence on the part of the plaintiff, either in falling into the error, or in not sooner claiming redress; and [iii] no intervening rights have accrued; and [iv] the parties may still be placed in *statu quo;* equity will interfere, in its discretion, in order to prevent intolerable justice. [numbering added for ease of reference].

*Becknell,* 329 So.2d at 60–61 (quoting *State Highway Commission v. State Construction Co.,* 203 Or. 414, 435, 280 P.2d 370, 380 (1955)).

That the Mississippi Supreme Court, as well as diversity courts bound to apply its law, have embraced *Becknell* as the test for rescinding a contract for unilateral mistake in proper cases is without question. *See Highlands Ins. Co. v. Allstate Ins. Co.,* 688 F.2d 398, 401 (5th Cir.1982); *Mississippi State Port Auth. v. Inland Tugs Co.,* 660 F.Supp. 38, 41 (S.D.Miss.1986); *Morris v. Liberty Mut. Ins. Co.,* 659 F.Supp. 201, 205 (N.D.Miss.1987); *Sacred Heart So. Missions v. Terminix Intern.,* 479 F.Supp. 348, 351 (N.D.Miss.1979). *Becknell* primarily benefits Prosper by denying equitable relief if, *inter alia,* Prosper committed gross negligence, certainly a more lenient standard than *Hunt* 's "inattention, personal negligence or misconduct" bar. No wonder, then, that CMR attempts to portray *Becknell* as an aberration of Mississippi law, an "extraordinary exception" relegated to equity's darkest closet. Rather, *Becknell* is the law. Incorporating the stringent rule of *Hunt* and *Wall, Becknell* adds to its predecessors by finally providing Mississippi courts a framework for exercising greater equitable latitude when resolving rescission disputes. The *Becknell* test thus allows a court of equity ultimately to make a truly equitable decision, a superior inquiry compared to that which would require application of a straightjacket rule that forbids any real discretion. Indeed, the record reveals that Prosper's negligence caused the mistake, however, as *Becknell* recognizes:

Implicit in the very definition of "mistake" is some degree of negligence. Human failure is its essence and it denotes an error of judgment. Nevertheless, it still remains the obligation of a court of equity to determine whether, despite such misjudgment, it would be inequitable and fundamentally unjust not to grant relief from honest but negligent mistake.

*Becknell,* 329 So.2d at 61. The district court properly applied *Becknell* as the law in examining Prosper's claim for equitable relief. We now consider the court's factual findings within the *Becknell* framework.

Since the parties have stipulated that there are no intervening rights and the 27–7 well is now plugged and abandoned, thus the parties may be returned to *statu quo ante,* the last two elements of the *Becknell* test are not at issue in this appeal. We need only inquire, therefore, whether the district court was clearly erroneous in finding that (i) there existed no meeting of the minds between Prosper and CMR and (ii) Prosper was not grossly negligent in falling into error.

### Minds never met

In the district court's opinion, "the evidence demonstrate[d] overwhelmingly that the minds of the parties never met regarding payment of royalties prior to reaching 250% of payout." Essentially, the court combined its finding of no meeting of the minds with that of unilateral mistake. The "overwhelming" evidentiary support for its finding of no meeting of the minds included the following: (i) the parties never discussed royalty payments, (ii) Prosper had no reason or incentive to expose itself to royalty liability by entering into a JOA where, under Board order and the Mississippi forced pooling statute, CMR was not entitled to any royalty payments until reversion, (iii) Prosper steadfastly refused, despite CMR's repeated requests, to release CMR from the penalties provided by the statute and the Board's order, (iv) Prosper's witnesses unequivocally established that Prosper never intended to obligate itself to paying royalties under the JOA until reversion, and, in direct contrast to Prosper's understanding of their agreement, (v) CMR considered itself entitled to, and fully expected, to receive royalty payments from the effective date of the JOA. Under these circumstances, the district court found "inescapable the conclusion that the parties' minds never met on the matter of royalty payments." Such a finding was not clearly erroneous.

Not gross

CMR next contends that the district court's gross negligence analysis was in error because the court focused on Prosper's intent rather than its conduct. Evidence of Prosper's intent, as opposed to its conduct, CMR contends, is evidence going to the issue of whether Prosper was mistaken in the first place rather than the critical inquiry of whether Prosper was grossly negligent in making the mistake. Regardless of the court's focus, we will overturn a district court's finding of gross negligence only if such a finding constitutes clear error. F.R.Civ.P. 52(a).

The district court expressly found:

> While a careful analysis of the various terms of the JOA should have alerted Prosper to its effect on royalty payments—that the agreement failed to exclude pre–250% payout royalty payments—the court cannot conclude that its failure to have realized this fact and taken steps to have avoided this result amounted to gross negligence, especially since Prosper had unequivocally refused to release CMR from the effect of the penalty provisions of the forced-pooling order. At most, this was an oversight on the part of Prosper's representatives.

While *Becknell* does not describe what conduct constitutes gross negligence, the Fifth Circuit, applying the *Becknell* test, denied rescission due to the mistaken party's gross negligence in *Highlands Ins. Co. v. Allstate Ins. Co.,* 688 F.2d 398, 401 (5th Cir.1982). A brief excerpt from *Highland* detailing Allstate's repeated and stupendous error which amounted to gross negligence is enough to convince us that Prosper's error is comparatively slight and certainly not grossly negligent:

> Allstate had issued Policy No. 899 to replace Policy No. 190, but because of clerical error, nevertheless neglected for six months to terminate Policy No. 190. Thus Allstate itself violated the "other insurance' clauses of both Policy No. 190 and Policy No. 899 by keeping both policies in force simultaneously. Allstate then sent Tri–State conflicting notices, one of them saying Policy No. 899 was canceled, the other saying the policy was to be continued. It further confused matters by failing to provide a full date in the continuation notice. When Tri–State's general manager communicated with Allstate to find out whether Allstate had insurance on the Pearl Street property, Allstate was unable to give him a definite answer. Several months later, apparently through another clerical mistake, Allstate sent the renewal policy to Tri–State. Although no one paid the premium on this policy, Allstate allowed the policy to remain in Tri–State's files for almost a year, with a copy in its own files, and did nothing either to collect the premium or to cancel the policy until after the loss.

*Highlands,* 688 F.2d at 401. In contrast to Allstate's repeated blunders, Prosper singularly erred by

omitting language from the JOA delaying CMR's collection of royalties. Yet CMR characterizes Prosper's error as gross, asking how Prosper's seasoned negotiators could fail to understand the clear and unambiguous provisions of the JOA which obligated Prosper to pay royalties to CMR. Perhaps CMR could shed some light on the cause of Prosper's "slight error" since CMR waited some nineteen months after executing the JOA to make its first claim for royalties, a delay indicative of its own error in fully understanding the nuances of the lengthy model form JOA.[13] We conclude that the district court correctly found Prosper was not grossly negligent in mistakenly interpreting the JOA. Because the district court properly applied Mississippi law and did not clearly err in undertaking its factual findings, we affirm its decision to rescind the 27–7 JOA.

Mutual mistake

Prosper brings its cross-appeal solely to contest the district court's refusal to reform the JOA on the basis of its alternative affirmative defense of mutual mistake. Because Prosper failed to meet its evidentiary burden of establishing mutual mistake beyond a reasonable doubt and because the district court's express findings sufficiently explained its denial under Mississippi law, we affirm.

Under Mississippi law, mutual mistake may be the result of either a mistake on the part of both parties or a mistake on the part of one party with fraud or inequitable conduct on the part of the

---

[13]The district court found evidence suggesting that CMR itself did not contemplate at the time the JOA was executed that it would be entitled to claim royalties prior to 250% payout. Unable to support this conclusion beyond a reasonable doubt, however, the court, nevertheless, found that

> after CMR's execution of the JOA's for the Poplarville field, including the 27–7 JOA, CMR on May 12, 1987 paid to Prosper the sum of $1,449,457.01 for its proportionate share of the accrued expenses on seven other wells in the field, but CMR did not withhold from this payment the amount which would at that time have been due as royalties for the 27–7 well, in the amount of more than $390,000, which CMR now claims that it knew was owed to it. CMR did not even reference in its letter of transmittal that there was a claim for outstanding royalty payments. In fact, CMR first demanded the payment of royalties in December 1988, some nineteen months after the 27–7 JOA had been executed, and that demand came only after a notification from Prosper that Petro–Hunt was to become the operator of the wells in the Poplarville Field.

other party. *Johnson v. Consolidated American Life Ins. Co.,* 244 So.2d 400, 402 (Miss.1971). *See also Perrien v. Mapp,* 374 So.2d 794, 796 (Miss.1979) (citing *Johnson* ). As with unilateral mistake, Prosper's burden of proof is beyond a reasonable doubt. *Wise v. Scott,* 495 So.2d 16, 19 (Miss.1986).

The district court was unable to conclude beyond a reasonable doubt that CMR was mistaken about the royalty provision in the 27–7 JOA. Prosper does not contest this finding of the district court. Prosper argues, instead, that the district court failed to consider whether CMR committed fraud or acted inequitably and that, as a result, the court applied an incorrect standard of law in focusing solely on whether CMR was itself mistaken.

We find no merit to Prosper's argument. In concluding that Prosper's defense of mutual mistake was unavailing, the district court stated in its memorandum opinion:

> [W]hile the proof does not exclude the real possibility that CMR realized during negotiations and at the time of execution of the JOA that Prosper was not aware of the royalty provision yet remained silent, or the possibility that CMR's claim for royalty payments was merely an afterthought, the court is unable to conclude *beyond a reasonable doubt* that CMR was similarly mistaken (emphasis in original).

The above portion of the district court's opinion reflects, contrary to Prosper's allegations, that the court did, in fact, consider whether (i) "CMR realized ... that Prosper was not aware of the royalty provision yet remained silent" and (ii) "CMR's claim for royalty payments was merely an afterthought." Under *Johnson* and *Perrien,* the district court here satisfied its two-part inquiry concerning the non-movant in a mutual mistake claim. That the court ended its discussion of mutual mistake with the grammatically concise finding that CMR was not "similarly mistaken" certainly does *not* suggest that the court considered whether CMR was itself mistaken without also considering allegations of CMR's inequitable conduct. Indeed, as the above excerpt from the district court's opinion demonstrates, the court considered whether CMR was also mistaken and whether CMR acted inequitably. Unable to document either consideration beyond a reasonable doubt, the court properly

rejected Prosper's claim of mutual mistake.

## Wrapping it up

We affirm the district court's finding that Prosper committed a unilateral mistake in its interpretation of the 27–7 JOA. Because the district court properly applied Mississippi law and made sufficient findings in rescinding the JOA, we affirm its decision. Finally, because the district court made a sufficient inquiry whether CMR was mistaken and whether CMR acted inequitably, we affirm the district court's denial of Prosper's claim of mutual mistake.

AFFIRMED.

GARWOOD, Circuit Judge, concurs in the result.