# IN THE COURT OF APPEALS
# OF THE
# STATE OF MISSISSIPPI
## NO. 97-CA-01413-COA

**HEMPHILL CONSTRUCTION CO.**                                                        **APPELLANT**

**v.**

**CITY OF LAUREL**                                                                    **APPELLEE**

DATE OF JUDGMENT:               10/20/97
TRIAL JUDGE:                    HON. BILLY JOE LANDRUM
COURT FROM WHICH APPEALED:      JONES COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:        DAVID MOCKBEE
                                MARY E. HALL
ATTORNEYS FOR APPELLEE:         WILLIAM S. MULLINS
                                DEIRDRE D. JONES
NATURE OF THE CASE:             CIVIL - OTHER
TRIAL COURT DISPOSITION:        DENIAL OF BID PROTEST AFFIRMED
DISPOSITION:                    AFFIRMED - 11/09/1999
MOTION FOR REHEARING FILED:     06/22/1999
CERTIORARI FILED:               ; granted 01/27/2000
MANDATE ISSUED:

ON MOTION FOR REHEARING

EN BANC:

KING, J., FOR THE COURT:

¶1. The motion for rehearing is granted. The prior opinion is withdrawn and this opinion substituted.

¶2. Hemphill Construction Company appeals from an adverse ruling by the Jones County Circuit Court. The circuit court affirmed the decision of the Laurel City Council which awarded a contract to another construction company, Harold West Contractors, Inc. On appeal, Hemphill Construction assigns two errors:

**I. WHETHER A MUNICIPALITY MAY LEGALLY AWARD A CONTRACT FOR A COMPETITIVELY BID PUBLIC CONSTRUCTION PROJECT AT A CONTRACT PRICE WHICH IS HIGHER THAN THE PRICE BID.**

**II. WHETHER A PUBLIC BIDDER'S SOLE REMEDY IN THE CASE OF BID MISTAKE IS**

**THE WITHDRAWAL OF ITS BID.**

¶3. Finding no error, this Court affirms the circuit court judgment.

## FACTS

¶4. The City Council of Laurel voted to erect the Laurel Sportsplex-Baseball, Softball, and Soccer Fields. In June of 1997, the City of Laurel (the City) advertised for bids on this project. The bids were for the supplying of all labor and materials necessary for the construction of the Laurel Sportsplex. The City required that bids be received by 10:00 a.m. on August, 8, 1997. The date for submission of bids was subsequently extended to August 15, 1997.

¶5. On August 15, 1997, three sealed bids were submitted to the City and opened. Harold West Contractors's bid was $1,579,400, Hemphill Construction's, $1,999,990, and Sullivan Enterprises's, $2,377,000. Within an hour after the bid opening, West Contractors sent a fax letter notifying the City that it had made an error in its bid in the amount of $300,823. The error had been made by its estimator in failing to enter the category of "sitework cost" in the base bid. The letter indicated that West Contractors had attempted to call to revise its bid proposal but was unable to make contact prior to the bid opening. West Contractors requested that its bid be increased by $300,823 or withdrawn. With the addition of sitework costs, West Contractor's final bid totaled $1,880,223, which was $119,767 below Hemphill Construction, the second lowest bidder.

¶6. The City conducted an investigation of the mistake claimed by West Contractors. The city attorney and engineer reviewed the documents used by West Contractors to prepare its bid, and concluded that a mistake had indeed occurred. It was their determination that "the error occurred as an inadvertent nonjudgmental mistake by a clerk failing to add an entire section for Site work, and . . . the City [could] legally allow West to correct said error in its bid." Because West Contractors remained the lowest bidder after the correction in its bid, the City accepted the corrected bid and awarded a contract in the amount of $1,880,223 to West Contractors.

¶7. On September 17, 1997, Hemphill Construction submitted a letter to the City which initiated a formal protest of West Contractor's corrected bid and the City's decision to award the contract to West Contractors. Hemphill Construction contended that, under Mississippi law, West Contractor's only relief after having submitted a bid with an error was withdrawal of its bid. Hemphill Construction argued that because withdrawal was required, it was entitled to the contract award as the lowest and best bidder.

¶8. On September 23, 1997, the City responded by letter to Hemphill Construction's protest letter. In that letter, the City stated that it had broad discretion to determine the lowest and best bidder, and therefore had the authority to allow West Contractors to correct its bid. It concluded that "the City council's action in this fact situation was reasonable and fair and was not arbitrary and capricious. The City Council's actions did not result in the order of the bidders being changed in any way. The City Council's actions did not in any way damage the public bidding process. The City Council's action was fair and reasonable as far as the City [was] concerned. The bid of West, even after being corrected to the intended amount, was still the lowest and best bid and met all specifications."

¶9. Aggrieved, Hemphill Construction filed a bill of exceptions appealing the City Council's decision to the Jones County Circuit Court. After a hearing in this matter, the circuit court found that the City had "acted

reasonably, honestly, and in good faith in awarding the contract to Harold West at the intended corrected amount, which was the lowest bid." It held that the City's decision to award the contract to West Contractors was fairly debatable, proper and was not arbitrary or capricious. The circuit court affirmed the City Council's decision. Hemphill Construction now appeals the judgment of the circuit court.

## STANDARD OF REVIEW

¶10. "The scope of a reviewing court is limited in examining the actions of a municipal board. The order of the governing body of a municipality may not be set aside if its validity is fairly debatable. Such an order may not be set aside by a reviewing court unless it is clearly shown to be arbitrary, capricious, or discriminatory or is illegal or without substantial evidentiary basis." *Sunland Publishing Co. v. City of Jackson*, 710 So.2d 879, 881-2 (Miss.1998).

¶11. "'Fairly debatable' is the antithesis of arbitrary and capricious. If a decision is one which could be considered 'fairly debatable,' then it could not be considered arbitrary or capricious ...." *City of Biloxi v. M.C. Hilbert*, 597 So.2d 1276, 1280-1(Miss.1992).

## DISCUSSION

¶12. Hemphill Construction contends that the City improperly allowed West Contractor to change its bid after submission. It argues that the sole remedy in the case of bid mistake is withdrawal of the bid.

### Law

¶13. "As a general rule, equitable relief will be granted to a bidder for a public contract where he has made a material mistake of fact in the bid which he submitted, and where, upon the discovery of that mistake, he acts promptly in informing the public authorities and requesting withdrawal of his bid or opportunity to rectify his mistake, particularly where he does so before any formal contract is entered into." 64 Am Jur 2d § 84.

### Mississippi Contract Principles

¶14. Under Mississippi contract law, "[e]quity will grant appropriate relief for a unilateral mistake in proper cases." *Mississippi State Bldg. Com'n v. Becknell Construction, Inc*., 329 So.2d 57, 60. (Miss.1976). "[W]here the mistake is of so fundamental a character, that the minds of the parties have never, in fact, met; or where an unconscionable advantage has been gained, by mere mistake or misapprehension; and there was no gross negligence on the part of the plaintiff, either in falling into the error, or in not sooner claiming redress; and no intervening rights have accrued; and the parties may still be placed in status quo; equity will interfere, in its discretion, in order to prevent intolerable injustice." *Mississippi State Bldg. Commission,* 329 So.2d at 60-1.

### Analysis

¶15. This Court finds that under basic principles of equity the City is vested with authority to allow a change to a bid after its submission when a material mistake has been made in the bid. The correction is permitted provided the mistake is inadvertent or unintentional and is not contrary to the interest of the city or the fair treatment of other bidders.

¶16. West Contractors submitted a bid to the City which omitted a category of construction relating to sitework. This company, acting through its attorney, explained that a mistake in the bid occurred specifically as follows:

> The mistake, as evidenced by [the] computer printout showing the final bid calculation ("bid worksheets"), occurred when the final computer calculation of West's bid was prepared without including the intended amount of $300,823 for Sitework in the proper bid subdivision. Sitework should have been included as an element of "Subdivision Zero" ("0"), which is the base bid subdivision. However, when the amount for Sitework was keyed into the computer for the final calculation, the letter "O" rather than the number "0" was entered by mistake as the subdivision designation and therefore was not included in the base bid price in Subdivision 0 (zero). West did not realize its employee had inadvertently struck the letter "O" instead of the number "0" to designate the bid subdivision for Sitework until after West's bid was submitted and the computer printout of the final calculations was reviewed. Since West has no subdivision "O", the amount for Sitework was not included in the base bid but appeared as a separate, unrelated item on the printout which could not, due to its length, be reviewed in its entirety before the bid had to be submitted. When the bid form was filled out then, it reflected an incorrect amount for the base bid subdivision.

¶17. The City investigated the circumstances surrounding the mistake and determined that the mistake was inadvertent and nonjudgmental. Evidence in the record supports this determination. This Court finds that the circuit court's order was fairly debatable and the City properly exercised its authority to allow a change to a bid when the circumstances did not inflict unfair treatment on the city or other bidders. West Contractor's bid, after the correction, remained the lowest and best bid.

¶18. The dissent suggests that our decision opens the door for fraud in the bid process so as to allow a bidder to underbid to insure that his bid is the lowest. However, what the dissent fails to recognize is that it is not merely the lowest bid which is to be accepted, but the lowest and **best**. *Canton Farm Equipment, Inc. v. Richardson,* 501 So.2d 1098, 1104 (Miss. 1987). The determination of what is the lowest and best bid is not merely a matter of addition and subtraction, but requires the sound consideration of many things.

¶19. "[P]ublic boards are vested with a sound discretion in determining who is the 'lowest and best bidder,' and their decision, when based on an honest and reasonable exercise of the vested discretion will not be interfered with by the courts. We adhere to this principle, and when the discretion is properly exercised, the courts will not interfere with the judgment of a public board." *Mississippi State Building Commission,* 329 So.2d at 59-60.

¶20. Finding no error in the instant case, this Court affirms the circuit court judgment.

**¶21. THE JUDGMENT OF THE JONES COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**BRIDGES, DIAZ, PAYNE, AND THOMAS, JJ., CONCUR. McMILLIN, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SOUTHWICK, P.J., AND LEE, J.**

**IRVING, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ AND PAYNE, JJ. MOORE, J., NOT PARTICIPATING.**

IRVING, J., CONCURRING:

¶22. I agree with the majority that the City of Laurel acted within its authority when it allowed the correction of Harold West Contractors's (West) bid. However, because I am concerned that the majority's holding may be interpreted as a pronouncement of blanket authority for public entities to allow unfettered post-bid-opening amendments to erroneously submitted bids, I write this special concurrence to make clear that I support the majority's holding on the specific facts presented here.

¶23. I share the concerns expressed by Chief Judge McMillin in his dissent. However, I do not join his dissent because I do not believe our public entities should always be prevented from allowing a post-bid-opening amendment to an erroneously submitted bid if it can be shown, as was the situation in the case *sub judice*, that an innocent error occurred in the initial bid calculation. I believe in cases where there is no evidence of bad faith or lack of diligence on the part of the bidder, or collusion between the bidder and the public body, amendments should be allowed if it can be shown further that a substantial monetary benefit will accrue to the public body by allowing the amendment. I would not favor or support a blanket rule allowing amendments at will of public bids after bid opening. Such a rule has the potential for engendering fraud and bid rigging of untold proportions. I do not read the majority's opinion as granting such blanket authority.

¶24. My support of the majority's holding is premised on the narrow facts before us. In the case *sub judice*, West was initially the low bidder and remained so after the correction. After the correction, the difference between West's bid and Hemphill's bid which was the initial next low bid, was $119,767. If West were engaging in dishonest maneuvering, it is difficult to understand why it chose to leave a gap of $119,767 between its recalculated bid and Hemphill's. There is no evidence or suggestion that collusion existed between the City of Laurel and West either before the bid opening or during the City's investigation of West's miscalculation.

¶ 25. It is difficult to see how either of the other two options facing the city would have been in the best interest of the taxpayers: accept the next low bid at a cost of $119,767 or rebid the project. While we do not know what would have been the range of new bids, I do not think it unreasonable to assume that the probability was slim that it would have been less than the present range since each bidder had had an opportunity to scrutinize the bidding analysis of the others, and quite frankly, the range might very well have exceeded the present. While I do not mean to suggest that concern about higher bids on a re-bid project always justifies allowance of a post-bid-opening amendment to an erroneously submitted bid, I do mean to suggest in this case, it was one of the factors to be considered in light of the fact the city could stand to lose $119,767. I think we would have quite a different case if there were a small difference between the corrected bid and the next low bid, for in such a case, it would be difficult to see any substantial tangible loss to the public entity. Further, it would be unwise, and in my opinion improper, to allow post-bid-opening amendments in cases where the difference between the re-calculated bid and the initial next low bid is small.

¶26. I do not think our holding today increases the chances of some unscrupulous bidder drastically under-bidding in the hope of obtaining an increase later in his bid by asserting innocent mistake in the initial bid calculation. The vitality and viability of such a scheme would depend necessarily on other bidders bidding an amount sufficiently high enough to allow a hefty difference between the re-calculated bid and the initial next low bid. The unscrupulous under-bidder could not guarantee such a circumstance, and it seems to me since he could not control the outcome of his scheme, he would be loath to undertake it in the first place.

**DIAZ AND PAYNE, JJ., JOIN THIS SEPARATE WRITTEN OPINION.**

McMILLIN, C.J., DISSENTING:

¶27. I respectfully dissent. In my view, the only appropriate remedy in a situation where a bidder, through his own negligence, has submitted a bid in an amount other than what he claims to have intended, is to permit the erroneous bid to be withdrawn. Permitting a post-opening amendment that alters the proposed contract price (with the possible exception of non-judgmental errors apparent on the face of the bid document itself), is indistinguishable from permitting an untimely bid since such a bid, at the critical time of bid opening, contains no useful information beyond the fact that the bidder intended to bid on the project. It is no different, in terms of information disclosed on its face, from the situation where a bidder, by inadvertence, sealed the bid form for a different project in the appropriately-marked bid envelope and, upon discovering that fact when his bid is opened for inspection, seeks to make a belated substitution.

¶28. I fear the majority potentially wreaks havoc with the bidding process with this rule. If the low bidder is entitled to correct his mistakes, there is, for example, no rational basis to prohibit some

other bidder from seeking to modify his bid to a lower figure based on a claim that certain costs were duplicated rather than omitted.

¶29. Admittedly, there is a degree of arbitrariness in denying a post-opening amendment of the bid under this circumstance, but some measure of arbitrariness is inherent in a public bidding process if it is not to descend into chaos as seemingly hard and fast rules are routinely waived or disregarded in the spirit of fairness and equity.

¶30. While I do not doubt West's claim that its erroneous bid was the result of an innocent mistake, the rule announced by the majority inevitably opens the bidding process up for potential fraud if bid amounts may be manipulated after bid opening based upon the bidder's own assertions of his true intentions substantiated only by previously-undisclosed internal business records. In an article entitled *Rationalizing the Bid Mistake Rules*, authored by William P. Rudland, and appearing in the May, 1987, issue of the Public Contract Law Journal, Mr. Rudland conceded the propriety of permitting a post-opening *withdrawal* of an erroneous bid, then turned to the matter of a post-opening *correction* and said:

> The bid correction environment is clearly different from that of bid withdrawal. Unlike the case of bid withdrawal, bid correction directly implicates considerations of integrity of the bidding process, for, whereas a bidder has nothing to gain from withdrawing its bid (other than avoiding a bad bargain, which harms no one), it has great incentive to improve its prospective profit after a public opening by seeking a bid correction which increases the bid price to something below the next low bidder. Coming from the other direction is the second or higher low bidder, who, by correcting its bid, displaces the original low bidder. What makes such an attempt to subvert the process particularly tempting is the absence of a need for involvement of third parties (such as the case of bid rigging or the kind of post bid opening conspiracy discussed earlier). It is a simple matter to bury a 'mistake' in one's working papers and later claim either an upward or downward bid price adjustment as a particular bidder's circumstances warrant.

William P. Rudland, *Rationalizing The Bid Mistake Rules,* 16 Pub. Cont. L.J. 446, 455-56 (1987). I find that to be a compelling argument against imbedding the practice followed by the City of Laurel into the jurisprudence of this state.

¶31. In 1980, the American Bar Association's Council of the Section of Public Contract Law and the Council of the Section of Urban, State and Local Government Law adopted resolutions approving recommended regulations to implement the Association's previously-approved Model Procurement Code for State and Local Governments. Those regulations provide that "[i]f the mistake and the intended correct bid are clearly evident on the face of the bid document, the bid shall be *corrected* to the intended correct bid . . . ." Model Procurement Code for State and Local Gov'ts Recommended Regulations Regulation 3-202.13.4(b) (1980) (emphasis supplied). However, these regulations go on to provide that, where a mistake is not evident on the face of the bid document itself - which is the case now before us - "[a] bidder may be permitted to *withdraw* a low bid if . . . the bidder submits proof of evidentiary value which clearly and convincingly demonstrates that a mistake was made." *Id.* at 3-202.13.4(c) (emphasis supplied).

¶32. Clearly, were this case to be decided under the ABA's recommended regulations, which certainly carry some persuasive authority, West would not be permitted to correct its bid. The persuasive impact of these model regulations on this Court is, in my view, enhanced by the fact that the applicable language has been transported essentially verbatim into this State's Procurement Manual governing bidding procedures for state agencies, where it appears as ¶3.202.13.4(3).

¶33. It seems odd at best, in the absence of binding authority or compelling argument requiring the contrary, for this Court to adopt a rule of construction of this state's public bidding laws that `would suggest the likelihood of a different outcome depending on whether some particular bid was submitted to a state agency or to a local governmental entity.

¶34. I would reverse and remand with instructions that would permit the City of Laurel, at its option, to adopt the next lowest bid or to reject all bids and re-advertise this particular public works project.

**SOUTHWICK, P.J., AND LEE, J., JOIN THIS SEPARATE WRITTEN OPINION.**